Original
No. 95-294

PETITION OF JAMES J. PREISENDORFER

(New Hampshire Division for Children, Youth and Families)

October 5, 1998

*Michael J. Sheehan*, of Concord, by brief and orally, for the petitioner.

*Steven M. Houran*, acting attorney general (*Martin P. Honigberg*, senior assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. In this petition for a writ of certiorari, the petitioner, James Preisendorfer, challenges a decision of a hearing panel of the New Hampshire Division for Children, Youth and Families (DCYF) that probable cause existed to add his name to the central registry based on allegations of child sexual abuse and inappropriate touchings. *See* RSA 169-C:35 (1994) (amended 1995). We vacate the decision and remand for proceedings consistent with this opinion.

The petitioner worked for Epsom Central School as a special education aide and assisted in running Epsom Better Buddies, a child care center for school age children established by him and his wife. In June 1994, the State Police and DCYF investigated allegations that the petitioner inappropriately touched and sexually abused three children. *See* RSA 169-C:34, :38 (1994) (amended 1994, 1995). DCYF subsequently notified the petitioner that it believed that the reports of abuse were founded and that his name might be entered into the central registry. *See* RSA 169-C:35. The petitioner disagreed and requested a hearing.

Following a hearing, the DCYF hearing panel found that DCYF "did sustain its burden of proof" that probable cause existed to

believe the reported abuse, and the panel ordered that the petitioner's name be added to the registry. *See* RSA 169-C:3, XIII-a (1994) (amended 1994, 1995). Subsequently, Epsom Central School suspended the petitioner without pay. The petitioner also allegedly resigned from Better Buddies in order to prevent revocation of its day care license.

We need address only the petitioner's contention that use of a probable cause standard of proof did not satisfy the procedural due process requirements of Part I, Article 15 of the New Hampshire Constitution. Our certiorari review requires us to evaluate whether the agency "acted illegally with respect to jurisdiction, authority or observance of the law . . . [or] abused its discretion." *Appeal of Dell*, 140 N.H. 484, 487-88, 668 A.2d 1024, 1029 (1995) (quotation and brackets omitted). We look to the decisions of other jurisdictions for guidance only in resolving the State constitutional issue before us. *See State v. Ball*, 124 N.H. 226, 233, 471 A.2d 347, 352 (1983).

We determine whether the hearing satisfied due process under a two-part test. *See Appeal of Plantier*, 126 N.H. 500, 505, 494 A.2d 270, 272 (1985). "First, it must be determined whether the challenged procedures concern a legally protected interest. Second, it must be determined whether the procedures afford the appropriate procedural safeguards." *Id.* at 505-06, 494 A.2d at 272 (quotation omitted); *cf. Cavarretta v. DCFS*, 660 N.E.2d 250, 253 (Ill. App. Ct. 1996) (applying two-part test to determine whether plaintiff was deprived of due process under the Fourteenth Amendment to the U.S. Constitution).

The petitioner argues that two protected interests are at issue, his interest in his profession and his standing in the community. The State deprives an individual of a protected liberty interest if it prevents him from continuing to work in an occupation generally open to similarly educated or experienced individuals. *See Richardson v. Chevrefils*, 131 N.H. 227, 237, 552 A.2d 89, 95-96 (1988); *Board of Regents v. Roth*, 408 U.S. 564, 572 (1972) (stating that Fourteenth Amendment liberty guarantees right to engage in "any of the common occupations of life"). The State may revoke the license of any child day care agency that employs a person listed on the registry in a founded report. *See* RSA 170-E:7, IV, :12, XI (1994). The panel's decision to enter the petitioner's name into the registry essentially barred him from working with children, and caused him to become unemployed and unemployable in his profession. *See*

*Richardson*, 131 N.H. at 239, 552 A.2d at 95-96. Thus, his interest in his profession is a protected interest. We proceed with our analysis based only upon the petitioner's interest in his profession because it is significant and his other interest is no greater. *See In re Tracy M.*, 137 N.H. 119, 124, 624 A.2d 963, 966 (1993).

We next decide whether the hearing afforded appropriate procedural safeguards. *See id.* at 123, 624 A.2d at 965. In this context, we address the petitioner's challenge to the use of a probable cause standard of proof. We consider three factors to determine the extent of process required:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Petition of Bagley*, 128 N.H. 275, 285, 513 A.2d 331, 338-39 (1986); *cf. Santosky v. Kramer*, 455 U.S. 745, 754 (1982) (applying similar three-factor test to determine the extent of process due in parental rights termination proceedings).

Under the first prong of the analysis, an individual's right to work within one's profession is a "privilege of fundamental significance." *Plantier*, 126 N.H. at 507, 494 A.2d at 273; *cf. Baker v. Cunningham*, 128 N.H. 374, 378-79, 513 A.2d 956, 958-59 (1986) (recognizing a hierarchy of protected interests in habeas corpus proceedings). The petitioner's interest in continuing his employment with the school and his work at Better Buddies is substantial, *see Lee TT. v. Dowling*, 664 N.E.2d 1243, 1250 (N.Y. 1996), so we turn to the last two prongs of our analysis.

The Child Protection Act, RSA ch. 169-C (1994) (amended 1994, 1995), requires DCYF to show probable cause that an individual abused a child in order to file a founded report of abuse in the central registry. *See* RSA 169-C:3, XIII-a, :35. Founded reports remain in the registry for seven years. RSA 169-C:35. The Act defines probable cause as information "that would justify a reasonable person to believe that a child" was abused. RSA 169-C:3, XXIII (1994). It also requires that petitions for abuse and neglect proceedings be supported by a preponderance of the evidence standard of proof. *See* RSA 169-C:13 (1994). The Act does not, however, require a particular standard of proof for hearings involving registry listings.

The State's interests, which include protecting children and controlling expenses associated with the management of a registry, have been recognized as significant by other jurisdictions. *See, e.g., Lee TT.*, 664 N.E.2d at 1251; *Cavarretta*, 660 N.E.2d at 258. We have recognized the State's interest in the welfare of children within its jurisdiction as being paramount to even the rights of parents in preserving their families. *See In re Tracy M.*, 137 N.H. at 124, 624 A.2d at 966. The State's *parens patriae* interest includes its interest in maintaining the central registry because the registry provides a mechanism for the State to protect children from abuse and to notify providers and licensing agencies of possible future abuse. *Cf. Lee TT.*, 664 N.E.2d at 1251. Both the State and the petitioner assert compelling interests; thus, we determine whether the probable cause standard is adequate by assessing the risk of erroneous fact-finding. *See id.*

Due process dictates the adoption of a minimum standard of proof that "reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants." *Santosky*, 455 U.S. at 755. Although the petitioner's loss may not be as grave as a parent whose rights are terminated, *see id.* at 758-59, the standard for an action resulting in loss of employment should not place the risk of error entirely on the individual, *see Lee TT.*, 664 N.E.2d at 1251-52. Probable cause may be a "practical compromise that allows officials to take prompt steps to temporarily . . . remove a child." *Dietz v. Damas*, 948 F. Supp. 198, 209 n.18 (E.D.N.Y. 1996) (quotation omitted). It is not justified, however, when it results in a "permanent denial of the right to employment in the childcare field without any consideration of the accuracy of the fact finding process." *Id.* at 209.

The probable cause standard of proof falls between suspicion and preponderance of the evidence, where proof by preponderance "means that evidence, taken as a whole, shows that [the] fact or cause shown to be proven is more probable than not." *State v. 77,014.00 Dollars*, 607 So. 2d 576, 581-82 (La. Ct. App. 1992) (quotation omitted), *writ denied*, 612 So. 2d 61 (La. 1993). Probable cause may be based upon circumstantial or hearsay evidence, and "[i]t may be established by demonstrating by some *credible evidence*" the fact at issue. *Id.* at 582 (quotation omitted). While the "preponderance standard allows for the balancing of evidence from both sides," *Valmonte v. Bane*, 18 F.3d 992, 1004 (2d Cir. 1994) (quotation omitted), the probable cause standard only requires the trier of fact to look at the "totality of the circumstances," *77,014.00 Dollars*, 607 So. 2d at 582 (quotation omitted), to determine whether

the "evidence goes beyond a mere suspicion." *Id.* Furthermore, the probable cause standard places the brunt of the risk of error, if not the entire risk of error, on a person subject to registration. *Cf. Cavarretta,* 660 N.E.2d at 258 (requiring use of preponderance standard rather than credible evidence because of high risk of error).

"Because proof by a preponderance of the evidence requires that the litigants share the risk of error in a roughly equal fashion," it applies only in situations where the parties' interests are equally important to society. *Santosky,* 455 U.S. at 787 (quotation, brackets, and ellipses omitted). Other States have adopted this standard for hearings to determine whether an individual's name should be added to or remain on their child abuse registries by statute, *see, e.g.,* Colo. Rev. Stat. § 19-3-313 (5.5)(b)(I) (1997); *cf.* Minn. Stat. § 626.556, Subd. 10e, 11c(b) (Supp. 1997), or by judicial determination, *see Cavarretta,* 660 N.E.2d at 258.

The adoption of a higher standard does not foreclose, however, the use of a lower standard during the investigative process. *See Lee TT.,* 664 N.E.2d at 1252. The New York State Department of Social Services may retain records and continue investigations when allegations are supported by some credible evidence, but it must prove reports of child abuse by a fair preponderance of the evidence before distributing the reports "to providers and licensing agencies as a screening device for future employment." *Id.* Similarly, New Jersey requires all reports of child abuse to be forwarded to the Central Registry of the Division of Youth and Family Services, which is not a public record, N.J. Stat. Ann. § 9:6-8.11 (West 1993). The New Jersey Division of Youth and Family Services may, on a limited basis, distribute reports, N.J. Stat. Ann. § 9:6-8.10a(b)(5) (West Supp. 1997), but any agency using the report to take remedial action must provide a proper administrative hearing, *see Physical Abuse at Blackacre Acad.,* 698 A.2d 1275, 1283 (N.J. Super. Ct. App. Div. 1997). The burden of proof for administrative adjudications, including those for professional license revocation, generally is a fair preponderance of the evidence. *See In re Polk License Revocation,* 449 A.2d 7, 12-16 (N.J. 1982) (applying the federal test for due process to determine the burden of proof for administrative hearings after noting that state statutes fail to provide standards).

Although the risk of harm to children may be greater with a higher standard of proof, the safety of children must be balanced against the rights of an individual accused of abuse. *See In re Tracy M.,* 137 N.H. at 124, 624 A.2d at 966. Where the protected liberty interest is the interest of a parent in preserving a parent-child

relationship, we have acknowledged that the State has a compelling interest in protecting the safety of children and have held that no constitutional error occurred when the legislature balanced these competing interests and adopted a preponderance of the evidence standard for abuse and neglect cases. *See id.* at 123-24, 624 A.2d at 966. We conclude that due process requires the same standard of proof for hearings of registry appeals when registration would deprive individuals of their protected liberty interests.

The addition of the petitioner's name to the registry appears as a final determination that he abused children and essentially excludes the petitioner from his profession for at least seven years. *See* RSA 169-C:35; *Richardson*, 131 N.H. at 239, 552 A.2d at 95-96; *cf. Cavarretta*, 660 N.E.2d at 254-55 (concluding that placement of name on state registry of child abuse may effectively preclude alleged offender from working in teaching and child care professions). Because the probable cause standard is easily met, we conclude that the risk of erroneously depriving the petitioner of his interest is great. *Cf. Cavarretta*, 660 N.E.2d at 258-59; *Valmonte*, 18 F.3d at 1003-04 (holding that use of preponderance standard only after denial of employment creates unacceptably high risk of error). Furthermore, we conclude that the additional burden placed on the State by using a preponderance of the evidence standard is small in comparison to the risk of harm to the petitioner. *See Bagley*, 128 N.H. at 285, 513 A.2d at 339; *Lee TT.*, 664 N.E.2d at 1252.

■■ We hold that due process requires that the preponderance of the evidence standard apply in any hearing to determine whether an individual's name should be added to the central registry, RSA 169-C:35, where that individual would be excluded from working in his or her profession due to that listing, RSA 170-E:7, IV. "[I]n the absence of full briefing and argument by the parties," *In re Tracy M.*, 137 N.H. at 122-23, 624 A.2d at 965, we decline to address the State's argument that the use of a probable cause standard was harmless error. Accordingly, we vacate the panel's decision and remand for proceedings consistent with this opinion.

In light of our disposition of the petitioner's due process argument above, we deem it unnecessary to address the remaining arguments presented. *See Petition of Smith*, 139 N.H. 299, 309, 652 A.2d 154, 161 (1994).

*Vacated and remanded.*

All concurred.