OPINION OF THE COURT
Leonard B. Austin, J.
This special proceeding, commenced by order to show cause granted on August 25, 2000, pursuant to article 78 of the CPLR, seeks a determination and declaration that Social Services Law § 422 (8) (a) (i) and (b) (i) and the regulations promulgated thereunder are unconstitutional on their face. In the alternative, petitioner seeks a declaration that said sections of the Social Services Law and regulations thereunder, as applied to petitioner, are violative of procedural due process upon the grounds that (1) the statutes and regulations fail to mandate a hearing prior to the submission of a name to the New York State Central Register of Child Abuse and Maltreatment (Register), and (2) that the statutes and regulations fail to mandate a time in which a hearing must be conducted. Petitioner also seeks to have his name expunged from the Register.
Notably, petitioner sought, as part of the order to show cause he submitted, and was granted, without opposition, to restrain the Department of Social Services (DSS) from conducting the hearing which he had previously requested and to which he is entitled under the challenged statutes and regulations.
Background
In January 2000, petitioner was advised that a report of suspected child abuse or maltreatment involving his four children had been filed with the Nassau County Department of Social Services. Thereafter, petitioner was advised that there was some credible evidence that he had abused or maltreated *205 the children named in the report. As a result, petitioner’s name was added to the Register.
Thereafter, petitioner was advised of his right to apply to the Commissioner of the New York State Department of Social Services to have the report amended to correct any inaccuracies, including an amendment which would reflect that the report was unfounded. This procedure is essentially an application for an administrative review of the investigation of the allegations and conclusion of “indicated” abuse based thereon. (Social Services Law §422 [8] [a] [i].) Such request must be made within 90 days of advice of an “indicated” report being sent to plaintiff. Upon such a request, the agency making the “indicated” finding must be “immediately” requested to respond. Such response must be made “expeditiously” but not later then 20 working days. (Social Services Law § 422 [8] [a] [ii].) If no credible evidence is presented upon such review the record is amended to reflect that the report of abuse is “unfounded” and the subject is promptly notified. (Social Services Law § 422 [8] [a] [iii].)
However, in the event of a finding of the existence of some credible evidence of abuse in the record, the subject of the investigation must be immediately notified so that a fair hearing can be held. (Social Services Law § 422 [8] [a] [iv], [v].) A fair hearing is thus automatically scheduled by the Department of Social Services in the event an “unfounded” result is not reached. The subject of such investigation need take no further steps to assure the scheduling of a fair hearing under Social Services Law § 422 (8) (b) (i). Plaintiff is correct that there is no time frame established in section 422 (8) (b) (i) for the scheduling of the fair hearing.
Here, petitioner sought amendment to the Register, to have his name expunged from the Register and to have a hearing. The application for full expungement was denied. It is noteworthy that the application for amendment of the report resulted in a partial amendment of the report to the extent that the inadequate guardianship allegations regarding three of his four children were changed from “indicated” to “unfounded.” The inadequate guardianship allegation regarding the fourth child was left as “indicated.” Since a determination not wholly favorable to petitioner was rendered, the matter was referred to the DSS Bureau of Special Hearings for a fair hearing. (Social Services Law § 422 [8] [b] [i].) Before the fair hearing could be held, petitioner commenced the instant proceeding by order to show cause and secured a stay of the fair hearing.
*206 Petitioner now seeks a declaration that the statutory scheme and regulations promulgated thereunder are unconstitutional and deprive him of his procedural due process rights. In essence, petitioner argues that the statutory scheme permits respondents to enter a name in the Register prior to conducting a fair hearing. Petitioner also challenges the scheme because it fails to provide a time limit within which the hearing must be commenced. Petitioner argues that this is a violation of the Due Process Clauses of the Federal Constitution (Fourteenth Amend) and New York Constitution (art I, § 6). In support of petitioner’s contentions, counsel for petitioner argues that the liberty interest includes the freedom from a false determination disseminated by the government that stigmatizes a citizen and interferes with that person’s ability to secure gainful employment, among other things. Without citing any authority, counsel for petitioner states that a person has a liberty interest in his/her good reputation, honor and integrity;
Petitioner further refines his argument and identifies the constitutional infirmity to be the fact that a name may be entered in the Register on the basis that some credible evidence exists to support the allegation prior to his having any opportunity to be heard. Significantly, the burden of proof at a fair hearing borne by the Department of Social Services is the far more stringent standard of a fair preponderance of the evidence than the credible evidence standard which initially causes one’s name to be placed in the Register and to remain after initial administrative review. (Social Services Law § 422 [8] [b] [ii].)
Respondents jointly oppose the petition and seek dismissal upon the ground that this proceeding was commenced beyond the four-month limitation period for article 78 proceedings. (CPLR 217 [1].) Respondents also argue that petitioner has not suffered the denial of a protected liberty or property interest and, as a result, lacks standing to maintain this proceeding.
Discussion
A. Statute of Limitations
A constitutional challenge of the validity of a legislative act is to be brought as an action for a declaratory judgment and not by way of an article 78 proceeding. (Rivers v Katz, 67 NY2d 485 [1986]; Matter of Bonar v Shaffer, 140 AD2d 153 [1st Dept 1988].) The court may, and hereby does, convert this proceeding into an action for a declaratory judgment. (CPLR 103 [c]; see, Press v County of Monroe, 50 NY2d 695 [1980]; Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 *207 NY2d 400 [1969].) As such, with jurisdiction obtained over all necessary parties, the matter is deemed timely commenced.
B. Standing
1. Protected Interest
Questions surrounding a deprivation of procedural due process are subject to a two-prong analysis. The threshold question is whether the challenged proponent possesses a protected liberty or property interest which has been interfered with by the State or, stated another way, whether petitioner is an aggrieved party to justify permitting his prosecution of this action. The second prong examines whether the procedures were constitutionally sufficient to protect petitioner’s rights. (See, Kentucky Dept. of Corrections v Thompson, 490 US 454 [1989]; see also, Petition of Preisendorfer, 143 NH 50, 719 A2d 590 [1998]; Cavarretta v Department of Children & Family Servs., 277 Ill App 3d 16, 660 NE2d 250 [1996].)
In determining whether there is a liberty interest at stake for which due process requirements exist, the court must look to the nature of that interest and whether it is within the protection of the Fourteenth Amendment. (Board of Regents v Roth, 408 US 564, 571 [1972] [where the Supreme Court, quoting National Mut. Ins. Co. v Tidewater Transfer Co., 337 US 582, 646 (1949), reinforced the notion that the concepts of liberty and property are “broad and majestic terms. They are among the Xg)reat (constitutional) concepts ... purposefully left to gather meaning from experience .... (T)hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged’ ”].)
Clearly, due process requires protection from the deprivation of liberty beyond the formal constraints imposed by the criminal process. However, the term “liberty” as used in the Fourteenth Amendment must be given some meaning and has been held to include, inter alia, the right to engage in any of the common occupations and to enjoy privileges seen as essential to the orderly pursuit of happiness. (Id; see also, Meyer v Nebraska, 262 US 390 [1923].) New York’s notion of due process is said to permit an even higher standard than the Fourteenth Amendment. (See, e.g., People v Isaacson, 44 NY2d 511, rearg denied 45 NY2d 776 [1978].)
2. Stigma Test
In a carefully reasoned analysis, the United States Supreme Court held that the interest in one’s reputation and the right *208 to be free of defamation is not a liberty or property interest protected against deprivation by the State without due process of law. (See, Paul v Davis, 424 US 693 [1976].) The Paul Court sustained the District Court’s dismissal of a civil rights claim pursuant to 42 USC § 1983 against the State for the distribution to merchants of a flyer captioned “Active Shoplifters” which contained petitioner’s name and photograph. The Court opined that “reputation alone, apart from some more tangible interests such as employment, is either liberty’ or ‘property’ by itself sufficient to invoke the procedural protection of the Due Process Clause * * * of the Fifth or Fourteenth Amendment.” (Id. 424 US at 701-702.) In essence, the Court has articulated that there must be more than mere stigma to trigger the protections of due process. The limitation of due process protection surrounding reputation and stigma is intended to prevent a flood of litigation for legitimate acts of government that may impact upon a citizen’s reputation.
In sustaining the dismissal of the complaint which alleged that the “Active Shoplifter” designation would inhibit petitioner from entering businesses for fear of being suspected of shoplifting and would work a serious impairment upon future employment opportunities, the Supreme Court, accepting that such consequences may result, found that due process protection is not implicated. The Paul Court reasoned:
“It is hard to perceive any logical stopping place to such a line of reasoning. Respondent’s construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under ‘color of law’ establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by respondent.” (424 US at 698-699.)
It is worth noting that the State’s action in Paul v Davis (supra) was the public dissemination of the derogatory information. In the instant case, public access to the Register is not readily available. Thus, dissemination is strictly regulated.
3. Stigma Plus Test
The Second Circuit has characterized the applicable test as “stigma plus.” (See, Valmonte v Bane, 18 F3d 992 [2d Cir 1994]; *209 Neu v Corcoran, 869 F2d 662 [2d Cir], cert denied 493 US 816 [1989].) It may fairly be said that the inclusion in the Register will result in stigma or “public opprobrium,” upon disclosure to state agencies and potential employers statutorily permitted to receive such information under Social Services Law § 422 (4) (A). (See, Valmonte v Bane, supra; Neu v Corcoran, supra.) After analyzing the line of cases dealing with the stigma plus test, the Second Circuit in Valmonte concluded that where a person listed with the Register is faced with a statutory impediment to employment the “stigma plus” prong of the test is satisfied. Indeed, one’s inclusion in a state register identifying one as a “child abuser” may well be viewed, in and of itself, as satisfying the stigma plus standard. (See, e.g., Benitez v Rasmussen, 261 Neb 806, 626 NW2d 209 [2001]; Matter of Allegations of Sexual Abuse, 314 NJ Super 149, 714 A2d 339 [1998]; Marold v Fendetti, 1997 WL 1526549, 1997 RI Super LEXIS 84 [RI Super Ct, Aug. 28, 1997, Hurst, J.]; Cavarretta v Department of Children & Family Servs., supra; Watso v Colorado Dept. of Social Servs., 841 P2d 299 [Colo Sup Ct 1992].)
In this case at bar, petitioner has not alleged a statutory impediment to employment. At most, petitioner, a practicing attorney, has argued hypothetically that he may seek employment in childcare or another line of work involving children or may elect to adopt a child. Either decision would essentially trigger statutory disclosure of his inclusion in the Register. Petitioner also argues that he may be denied admission to practice law as a result of his inclusion in the Register citing the requirement that a person possess the requisite character and fitness to practice law. Given the nature and severity of an “indicated” child abuse determination — as opposed to a claim of shoplifting, it is the opinion of this court that petitioner has sufficiently demonstrated that his inclusion in the Register satisfies the “stigma plus” standard that invokes the protections of procedural due process. Where State action “attaches ‘a badge of infamy’ to [a] citizen, due process comes into play.” (Wisconsin v Constantineau, 400 US 433, 437 [1971].) Thus, respondents’ argument that petitioner lacks standing must be rejected. The reality of the impact of the inclusion of one’s name in a state or central register of child abusers is sufficient to satisfy the “stigma plus” test.
C. Petitioner’s Due Process Rights
The evaluation of an administrative protocol, to determine whether sufficient procedures exist to satisfy procedural due process, requires a three-prong analysis in which the court *210 must examine (1) the nature of the private interest affected by official action, (2) the risk of error, and (3) the benefit of increased procedural safeguards in the action. (See, Matthews v Eldridge, 424 US 319 [1976]; Morrissey v Brewer, 408 US 471 [1972]; Valmonte v Bane, supra; see also, People v David W., 95 NY2d 130 [2000]; Matter of Allegations of Sexual Abuse, supra; Matter of Lee TT. v Dowling, 87 NY2d 699 [1996]; Watso v Colorado Dept. of Social Servs., supra.)
Due process is said to be “flexible and calls for such procedural protections as the particular situation demands.” (See, Morrissey v Brewer, supra at 481; Goulding v Feinglass, 811 F2d 1099 [7th Cir], cert denied 482 US 929 [1987].) Consideration of what process is due must begin with a determination of the governmental function involved and the private interest that has been affected by the acts of government. (See, Cafeteria & Rest. Workers Union v McElroy, 367 US 886 [1961].) The common understanding of due process, “actor, reus, judex, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings,” is not the sine qua non of proper protection. (Id. 367 US at 895; see also, Benitez v Rasmussen, supra.) The nature of due process does not demand rigid procedures in every situation in which the requirement arises.
State action which places a person’s good name, reputation, honor or integrity at stake has been held to give rise to the due process protection of notice and a hearing. (See, Wisconsin v Constantineau, supra [in which the Supreme Court held that the posting of notices by the police chief, pursuant to State statute, which forbids the sale of alcohol to a person named therein, was unconstitutional as no notice and hearing was afforded].)
The Supreme Court revisited the constitutionality of public postings by police chiefs in Paul v Davis (supra). There, the Court found that the posting of a person’s name and photograph on a poster captioned “Active Shoplifter” which resulted in inhibiting that person from entering stores for fear of being accused of shoplifting and the impairment of future employment opportunities, did not implicate due process concerns. The Court recognized that the posting in Constantineau deprived that person of the right, previously held under State law, to purchase liquor. It was the alteration of legal status coupled with the defamation which triggered the due process safeguards. (Paul v Davis, supra.) The Court concluded that due process protection applies whenever the State’s action *211 removes or significantly alters a protected status conferred and protected by State law. The alteration of such status triggers the procedural guarantees of due process. The interest in reputation without more is neither liberty nor property subject to due process protection. (Id. 424 US at 712.)
The private interest for which petitioner alleges deprivation without due process is his inclusion in the Register of Child Abuse as one against whom a report was indicated or founded. Petitioner alleges that the inclusion in the Register will deprive him of the ability to be admitted to practice law in another state if he so chooses and will harm his chances to adopt a child. Petitioner argues that the process is unconstitutional because it does not require a hearing prior to his name being entered into the Register or provide a time limit in which a hearing is to be conducted after a request to expunge.
The potential denial of admission to the practice of law in a State and the potential denial of the proposed adoption are considered substantial and important life interests. (See, Matter of Lee TT. v Dowling, supra.) However, the State’s interest in maintaining the Register is foremost in its parens patriae role. This State interest, among others, has been found to be “weighty and compelling.” (87 NY2d at 711; see also, Petition of Preisendorfer, supra; In re Allegations of Physical Abuse, 304 NJ Super 168, 698 A2d 1275 [1997]; Marold v Fendetti, supra; Cavarretta v Department of Children & Family Servs., supra.)
The statutory paradigm surrounding the Register provides for the investigation of an initial report of abuse by the local child protective agency. That investigation results in a determination either that the report was unfounded, in which case the matter is closed, or a determination that the report was indicated, based on “credible evidence” in which case the report is kept on file in the Register. The use of a lower standard during the investigation stage is not necessarily violative of due process. (Matter of Lee TT. v Dowling, supra; see also, Petition of Preisendorfer, supra.)
Petitioner posits that there should be a hearing prior to the inclusion of a name in the Register in the first instance to satisfy the requirements of procedural due process. However, New York’s Court of Appeals has held that such “[m]inimal procedural safeguards facilitate the State’s effort to limit children’s exposure to abuse because they allow the State to respond quickly to isolate children from potentially dangerous contact with adults on the first indication of possible maltreat *212 ment and forewarn providers and licensing agencies of possible future harm.” (Matter of Lee TT. v Dowling, supra, 87 NY2d at 710.) The Court of Appeals continued, stating that enhancing procedural due process safeguards for the benefit of private interest will impede the State’s efforts to protect the children although it may reduce the number of false adverse findings. (Id.) On balance, the interest of children to be shielded from abuse must take precedence. This is especially true when a party’s rights are amply protected in the statutory scheme.
The Lee TT. Court held that procedural due process requires that a report be substantiated by a fair preponderance of the evidence at a hearing, or that the time to move for expungement be expired prior to dissemination of the information to providers or licensing agencies. This protection, coupled with the additional safeguard afforded by the statutory mandate that a report not be disseminated if the acts contained in the report are not relevant to the inquiring agency (Social Services Law § 422 [8] [a] [iv]), satisfies the imperative of due process. This statutory scheme, with some modification, was approved by the Court of Appeals in Matter of Lee TT. v Dowling (supra), after analyzing the statutory procedures in light of procedural due process concerns.
The due process infirmities of the statute were addressed by the Lee TT. Court (supra), which determined that procedural due process required a higher standard of proof prior to dissemination. The Court of Appeals found no further infirmities. Today, the higher standard is applied. It is, therefore, appropriate to include one in the Register solely upon a “credible evidence” standard when a postdeprivation hearing affords the subject of such finding notice, an opportunity to be fully heard and the standard of evidence necessary to maintain the subject’s name in the Register is a fair preponderance of the evidence. (See, Matter of Lee TT. v Dowling, supra; Matter of Nils TT. v New York State Dept. of Social Servs., 221 AD2d 874 [3d Dept 1995], lv denied 87 NY2d 812 [1996]; Kenneth VV. v Wing, 235 AD2d 1007 [1997]; see also, Giglio v Dunn, 732 F2d 1133 [2d Cir], cert denied 469 US 932 [1984]; Barry v Barchi, 443 US 55 [1979]; Marold v Fendetti, supra; Watso v Colorado Dept. of Social Servs., supra.) The statutory scheme under Social Services Law § 422 satisfies this standard. Indeed, administrative review under section 422 (8) (a) (iv) necessarily includes a determination of whether the “indicated” finding will be “relevant and reasonably related to the employment” of the subject.
*213 Petitioner’s reliance on People v David W. (95 NY2d 130 [2000]) is misplaced. Unlike the statutorily restricted disclosures made from the Register, Megan’s Law disclosures are far more broad and redistribution of the information is not strictly regulated. Under Megan’s Law, disclosure of a risk level three sexual offender’s name, exact address, a photograph of the offender, background information which includes the crime for which the offender was convicted, modus operandi, type of victim and other conditions imposed is made to “vulnerable populations” who are at liberty to further disseminate the information to the public at large. Such disclosure, however, occurs only after a determination of guilt and a hearing to determine an offender’s appropriate risk level.
Finally, addressing plaintiff’s last argument that Social Services Law § 422 and its regulations set no specific time for the holding of such a hearing, an aggrieved party is not without remedy which is short of finding a constitutional infirmity. Certainly, at the very least, if a hearing is not reasonably set, an article 78 proceeding can be prosecuted to compel a hearing (CPLR 7803 [1]) and, in the interim, stay dissemination of such finding until a hearing is held (CPLR 7805).
D. Interpretation of Social Services Law § 422
In adopting article 6 of the Social Services Law, under Laws of 1973 (ch 1039), the State Legislature clearly set forth its “Findings and Purpose” by clearly stating in section 411:
“Abused and maltreated children in this state are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment. It is the purpose of this title to encourage more complete reporting of suspected child abuse and maltreatment and to establish in each county of the state a child protective service capable of investigating such reports swiftly and competently and capable of providing protection for the child or children from further abuse or maltreatment and rehabilitative services for the child or children and parents involved.”
It is against this backdrop that petitioner claims that his due process rights have been violated.
While such recitals do not necessarily establish the terms of the statute, they certainly “illuminate the purpose and intent of the enactment.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 122.) Even were there no recitals, the legislative intent is easily discerned from the statute now being assailed. *214 (See, Ellis v Gold, 204 AD2d 261 [2d Dept], lv denied 84 NY2d 807 [1994].)
In determining the constitutionality of the statute, the court must attempt to read it in a manner which renders it constitutional' and enforceable (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]) since there is a strong presumption in favor of constitutionality. (See, Cook v City of Binghamton, 48 NY2d 323 [1979].) In enacting Social Services Law § 422, as part of article 6, the State Legislature must be viewed as having intended a rational scheme which accomplishes its stated goal. (See, Ball v State of New York, 41 NY2d 617 [1977]; Kittinger v Buffalo Traction Co., 160 NY 377 [1899].) This is especially true when the statute is designed to protect children. (See, e.g., Simmons v Burrell, 8 Misc 388 [Sup Ct, Niagara County], appeal dismissed 31 NYS 1133 [1894].) There is no doubt in this court’s mind that the challenged statutes are constitutional and reasonable. Taken on balance, the de minimis inconvenience experienced by petitioner in vindicating his rights is far outweighed by our strong need to protect children from abuse and maltreatment.
Accordingly, the motion to dismiss the petition must be granted.
Conclusion
For the reasons herein stated, the petition must be dismissed. Petitioner would be best advised to pursue the vindication of his rights as provided under Social Services Law § 422 (8) (b) (i).