NO. 4-01-0760

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MARK LYON, ) Appeal from 

Plaintiff-Appellee, )   Circuit Court of

          v. ) Champaign County

THE DEPARTMENT OF CHILDREN AND FAMILY ) No. 01MR226

SERVICES; JEFF McDONALD, in his )

Capacity as Director of the Department ) 

of Children and Family Services; and ) 

CAROL SILCOX, in Her Capacity as ) Honorable

Administrative Law Judge, ) Thomas J. Difanis,

Defendants-Appellants. ) Judge Presiding.

_________________________________________________________________

JUSTICE APPLETON delivered the opinion of the court:

The Department of Children and Family Services (Department) recorded in its central register that plaintiff, Mark Lyon, had sexually molested a minor.  See 325 ILCS 5/7.7 (West 2000).  Lyon requested the Department to remove the record from the registry, and when the Department refused, he filed an administrative appeal.  See 325 ILCS 5/7.16 (West 2000).  After an evidentiary hearing, an administrative law judge issued a recommended decision upholding the Department's initial decision not to remove the record.  

The Department's Director adopted the recommended decision, and Lyon filed an action for administrative review, naming the Department, Director, and administrative law judge as defendants.  See 325 ILCS 5/7.16 (West 2000); 735 ILCS 5/3-103 (West 2000).  The circuit court reversed the Director's decision on the ground that the Department's untimely production of documents during the administrative proceedings had deprived Lyon of due process.  Defendants appeal.  We disagree with the circuit court's rationale but affirm its judgment.
 

I. BACKGROUND

Section 7.7 of the Abused and Neglected Child Reporting Act (Act) (325 ILCS 5/7.7 (West 2000)) requires the Department to maintain "a central register of all cases of suspected child abuse or neglect."  As soon as it receives a report of alleged child abuse or neglect, the Department's regional child protective service unit (service unit) must transmit a copy of it to the central register.  325 ILCS 5/7.10 (West 2000).  Within 60 days after receiving the report, the service unit must determine whether the report is "'indicated' or 'unfounded.'"  325 ILCS 5/7.12 (West 2000).  If it is impossible to begin or complete an investigation within 60 days, the service unit may deem the report "'undetermined[,]' provided every effort has been made to undertake a complete investigation."  325 ILCS 5/7.12 (West 2000).  "The Department may extend the period in which such determinations must be made in individual cases for additional periods of up to 30 days each for good cause shown."  325 ILCS 5/7.12 (West 2000).

A report is "indicated" "if an investigation determines that credible evidence of the alleged abuse or neglect exists."  325 ILCS 5/3 (West 2000).  A report is "unfounded" if "it is determined after an investigation that no credible evidence of abuse or neglect exists."  325 ILCS 5/3 (West 2000).  A report is "undetermined" if "it was not possible to initiate or complete an investigation on the basis of information provided to the Department."  325 ILCS 5/3 (West 2000).  The Act does not define the term "credible evidence."  A regulation says:  "'Credible evidence of child abuse or neglect' means that the available facts[,] when viewed in light of surrounding circumstances[,] would cause a reasonable person to believe that a child was abused or neglected."  89 Ill. Adm. Code §300.20 (Conway Greene CD-ROM June 2002).

When receiving a report, the service unit "shall make an initial investigation and an initial determination whether the report is a good[-]faith indication of alleged child abuse or neglect."  325 ILCS 5/7.4(b)(2) (West 2000).  If the report is a good-faith indication of abuse or neglect, the service unit will begin a formal investigation to decide whether the report is indicated or unfounded.  325 ILCS 5/7.4(b)(3) (West 2000).  

"Investigative staff shall have direct, in-person contact with the alleged child victim, the alleged perpetrator, and the child's caretaker within seven days of the date the report was received," unless the person is inaccessible.  89 Ill. Adm. Code §300.110(c) (Conway Greene CD-ROM June 2002).  "The Department may make collateral contacts with persons other than the subjects of the report or the reporter to obtain further information regarding suspected child abuse or neglect."  89 Ill. Adm. Code §300.110(e) (Conway Greene CD-ROM June 2002).  In deciding whether to make "collateral contacts," the Department will weigh (1) the allegations in the report, (2) the severity of the incident, and (3) the likelihood that the collateral contact will have relevant information.  89 Ill. Adm. Code §300.110(e)(1) through (e)(3) (Conway Greene CD-ROM June 2002).

When the service unit finishes its formal investigation, it must report its finding "forthwith" to the central register, 
i.e.
, the finding of "indicated" or "unfounded."  325 ILCS 5/7.12 (West 2000).  The Department must transmit to district school superintendents information regarding any employee of a school whom the Department has found to be a perpetrator in an indicated report.  89 Ill. Adm. Code §300.140(b) (Conway Greene CD-ROM June 2002).  If the subject of the report is a school employee, the school superintendent must notify the State Board of Education, the school board, and the chief administrative officer of the school that the employee "has been named as a perpetrator in an indicated report."  105 ILCS 5/10-21.4 (West 2000).  

The Department's regulation further provides:

"(b) The Department will transmit to district school superintendents in Illinois and private school administrators information regarding any persons known to be employed in a school or who otherwise come into frequent contact with children in a school who are determined to be perpetrators of indicated reports of child abuse and neglect.

(c) the Department will transmit to regional superintendents and the State Superintendent of Education information that a person known to be a holder of a certificate issued by the State Board of Education has been named as a perpetrator in an indicated report of child abuse or neglect."  89 Ill. Adm. Code §§300.140(b), (c) (Conway Greene CD-ROM June 2002).

If the perpetrator requests an expungement of the indicated record or an administrative hearing, the Department will so notify the district and regional school superintendents and the State Superintendent of Education.  89 Ill. Adm. Code §300.140(d) (Conway Greene CD-ROM June 2002).

Within 60 days after the Department notifies the "subject of a report" that it has completed its investigation,  the "subject" "may request the Department to amend the record or remove the record of the report from the register."  325 ILCS 5/7.16 (West 2000).  "Subject of a report" means either the child who was abused or neglected or the "person responsible who is also named in the report."  325 ILCS 5/3 (West 2000).

If the Department declines a request to expunge a record, the regulations provide for a two-step appeal.  "To begin the appeal process[,] the subject shall request in writing that the Department review its decision."  89 Ill. Adm. Code §336.40(c) (Conway Greene CD-ROM June 2002).  If, after reviewing the file, the Department again declines to expunge the record, the Department will issue a notice of right to an administrative hearing, and the subject can request a hearing in accordance with that notice.  89 Ill. Adm. Code §336.80 (Conway Greene CD-ROM June 2002).

If the Department disregards the subject's request to expunge a record or does not act within 10 days, "the subject shall have the right to a hearing within the Department to determine whether the record of the report should be amended or removed on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the] Act."  325 ILCS 5/7.16 (West 2000).  "Such hearing shall be held within a reasonable time after the subject's request ***."  325 ILCS 5/7.16 (West 2000).  A regulation requires the chief administrative law judge to "schedule *** a hearing at a date within 70 calendar days after the date of receipt of the appellant's request for an administrative hearing."  89 Ill. Adm. Code §336.110(a)(1) (Conway Greene CD-ROM June 2002).  

The Act provides:

"In such hearings, the burden of proving the accuracy and consistency of the record shall be on the Department and the appropriate Child Protective Service Unit.  The hearing shall be conducted by the Director or his designee, who is hereby authorized and empowered to order the amendment or removal of the record to make it accurate and consistent with this Act.  The decision shall be made, in writing, at the close of the hearing, or within 45 days thereof, and shall state the reasons upon which it is based."  325 ILCS 5/7.16 (West 2000).

At the administrative hearing, "the Department must prove that a preponderance of the evidence supports the indicated finding, or that the record is being maintained in a manner consistent with" the Act and regulations.  89 Ill. Adm. Code §336.100(e)(2) (Conway Greene CD-ROM June 2002).  "'Preponderance of the evidence' means the greater weight of the evidence or evidence which renders a fact more likely than not."  89 Ill. Adm. Code §336.20 (Conway Greene CD-ROM June 2002).

Within 20 days after receiving a timely request for an appeal, the Department shall send the appellant a copy of the investigative file, with confidential information deleted in accordance with Title 89, part 431, of the Illinois Administrative Code (89 Ill. Adm. Code §§431.15 through 431.140  (Conway Greene CD-ROM June 2002)).  89 Ill. Adm. Code §431.60(a) (Conway Green CD-ROM June 2002).  The Department shall not disclose the identity or location of persons reporting or cooperating in the investigation unless "an administrative law judge determines that the lack of such information would prejudice the appellant's case or violate due process of law principles."  89 Ill. Adm. Code §431.60(a) (Conway Green CD-ROM June 2002).  

Lyon was the choral director at Gibson City High School in Gibson City, Illinois.  On February 9, 2000, the Department received a report that he was suspected of sexually molesting a student, H.B.  The Department investigated the allegation, and in a letter dated April 11, 2000, notified Lyon it had determined the report was "indicated, for sexual exploitation, sexual molestation, and risk of sexual harm."  The letter further informed him that the "allegations will be held in the State Central Registry for 50 years."  That same day, the Department sent a copy of the letter to the superintendent of Gibson City High School as well as to the regional superintendent of schools.   On May 15, 2000, Lyon requested the Department to expunge the record from the central register and provide him a copy of the Department's investigative file.  (Actually, it was not until July 19, 2000, that the Department recorded the "indicated" finding in the central register.)  The Department provided Lyon a copy of its investigative file on May 25, 2000, but omitted the police report.  On July 17, 2000, Lyon again  asked the Department, in writing, for a complete copy of its investigative file.    

On July 19, 2000, the administrator of the central register sent Lyon a letter denying his request for expungement.  The letter stated the Department had "determined the report to be 'indicated.'  This means that credible evidence of abuse or neglect has been found."  The letter informed Lyon that if he wished to appeal, he had 60 days to do so.

On August 1, 2000, Lyon again wrote the Department, asking for the police report.  On August 10, 2000, the Department denied his request on the ground that he had not yet filed an appeal and departmental policy forbade releasing the police report to him until he did so.

Lyon filed his appeal with the Department on August 29, 2000.  In a letter dated September 13, 2000, the Department denied the appeal and declined to remove the record of the "indicated" finding from the central register.  The letter said that after "review[ing] all available facts," the Department had found documentation of "credible evidence to support the indicated finding."  The letter informed Lyon he had 15 days to request a hearing within the Department.

On September 13, 2000, Lyon sent another letter to the Department, asking yet again for the police report.  On September 15, 2000, he requested a hearing on the denial of his appeal.

On October 10, 2000, Lyon filed a motion to compel the Department to produce its unexpurgated investigative file, including the police report.  The next day, he filed a motion to expunge the record of the "indicated" finding on the ground that the Department had violated his due-process rights in that (1) the Department did not complete its investigation within 60 days; (2) the hearing would not begin until 266 days after the investigation began; (3) the Department gave him no opportunity for an informal conference; (4) the Department refused to provide him a complete copy of the investigative file, including the police report; and (5) the Department had denied his appeal under a credible-evidence rather than a preponderance-of-the-evidence standard of proof.  On October 13, 2000, the administrative law judge granted Lyon's motion for the unexpurgated file, and the next day, the Department provided the complete file to Lyon.

At the beginning of the hearing on November 1, 2000, the administrative law judge denied Lyon's motion to expunge.  The Department then presented its case.  The administrative law judge admitted into evidence the Department's investigative file, including the police report.  On that day, the Department brought to the hearing seven additional pages of the police report.  Prior to the hearing, neither the Department nor Lyon possessed those seven pages, and therefore the Department withdrew them from the exhibit.

During the Department's case, H.B. testified that as Lyon was giving her a ride home late at night on January 14, 2000, they stopped on a country road, where he kissed her, pulled her tank top off, fondled her rear, and masturbated in her presence.  She was 15 at the time and a student at the school where Lyon was employed as a teacher.  

The Department rested on November 1, and, on her own motion, the administrative law judge continued the hearing until November 13, 2000.  The parties later agreed to a continuance until December 19, 2000.  Because the administrative law judge was involved in an automobile accident on the way to the hearing on December 19, she continued the hearing, on her own motion, until January 24, 2001.

On January 24, 2001, Lyon presented his case.  He testified he merely gave H.B. a ride home and never touched her or sexually molested her.  He further testified that the grand jury refused to return an indictment against him for the offense of which the Department accused him.  The hearing concluded that day.  On February 9, 2001, the administrative law judge issued a recommended decision upholding the Department's "indicated" finding.  On March 23, 2001, the director adopted the administrative law judge's recommended finding as his final administrative decision.

Lyon filed a complaint for administrative review on April 9, 2001.  In a docket entry dated July 27, 2001, the circuit court said:

"The [c]ourt has heard arguments on July 24, 2001.  The [c]ourt has considered this matter and determines that the decision of the ALJ [(administrative law judge)] is to be reversed.  The Department's refusal to provide full and complete discovery to the [p]laintiff in a timely manner violated his due[-]process rights."

This appeal followed.

II. ANALYSIS

A. Delays in Discovery

   Defendants argue that because the Department produced the unexpurgated investigative file as soon as required under section 7.4(c)(1) of the Act (325 ILCS 5/7.4(c)(1) (West 2000)) and section 431.60(a) of the Department's rules (89 Ill. Adm. Code §431.60(a) (Conway Greene CD-ROM June 2002)), it did not violate the due-process clause.

The question is, what process was due to Lyon under the federal and state constitutions?  One cannot find the answer to that question in statutes or regulations.  See 
Cleveland Board of Education v. Loudermill
, 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 105 S. Ct. 1487, 1493 (1985).  Lyon had the right to due process "'not by legislative grace, but by constitutional guarantee.'"  
Loudermill
, 470 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 1493, quoting 
Arnett v. Kennedy
, 416 U.S. 134, 167, 40 L. Ed. 2d 15, 40, 94 S. Ct. 1633, 1650 (1974) (Powell, J., concurring in part).  Legislation does not determine the requirements of the due-process clause.  See 89 Ill. Adm. Code §431.60(a) (Conway Greene CD-ROM June 2002) (administrative law judge shall order disclosure of otherwise confidential information according to the dictates of due process).   

What, then, does the due-process clause require?  Broadly, it requires fundamental fairness in administrative proceedings.  
Cooper v. Department of Children & Family Services
, 234 Ill. App. 3d 474, 486, 599 N.E.2d 537, 545 (1992).  More specifically, with respect to discovery, it requires the administrative agency "to disclose evidence in its possession which might be helpful to [the] accused."  
McCabe v. Department of Registration & Education
, 90 Ill. App. 3d 1123, 1131, 413 N.E.2d 1353, 1359 (1980).  Administrative agencies have broad discretion in conducting their hearings, although they must exercise that discretion judiciously and not arbitrarily.  
Comito v. Police Board of Chicago
, 317 Ill. App. 3d 677, 687, 739 N.E.2d 942, 949 (2000), 
appeal
 
denied
, 193 Ill. 2d 584, 744 N.E.2d 283 (2001).  

Lyon does not allege the Department failed to produce the documents to him.  He merely alleges the Department failed to produce the documents in a timely manner.  Lyon has to show how the delay prejudiced him.  See 
McCabe
, 90 Ill. App. 3d at 1131, 413 N.E.2d at 1359.  He merely says, vaguely, in his brief:  "Without being provided with these complete and unexpurgated files in a timely fashion, the [p]laintiff's investigation and trial preparation were seriously impeded."  How, specifically, were they impeded?  What helpful witnesses could Lyon not interview or subpoena, and what exculpatory evidence could he not present?  For all that appears in the record, the seven pages of the police report and the witnesses listed therein might have hurt Lyon's case rather than helped it.  He had from November 1, 2000, to January 24, 2001, to follow any leads the seven pages might have disclosed.  Considering that the agency had broad discretion in the conduct of the proceedings, we find no basis in the record for holding that the proceedings were fundamentally unfair, at least with respect to discovery.  We disagree with the circuit court that the Department's alleged lateness in producing the documents violated Lyon's right to due process.

Even if we considered the allegedly untimely discovery not as a constitutional violation but as a possible violation of departmental rules, Lyon would still have to show actual prejudice from the violation.  See 
Little v. Civil Service Comm'n
, 131 Ill. App. 3d 848, 851, 476 N.E.2d 448, 450 (1985).  He has not done so.  Lyon cannot receive a windfall from a procedural violation that apparently caused him no actual harm.

B. Length of the Administrative Proceedings and Standard of Proof

Lyon argues the Department violated his constitutional right to due process by missing deadlines that the Act and administrative rules prescribed.  Defendants argue the Department did not take an unreasonably long time to investigate and decide Lyon's case.  

Due process requires the agency to provide a hearing "at a 'meaningful time.'"  
Stull v. Department of Children & Family Services
, 239 Ill. App. 3d 325, 335, 606 N.E.2d 786, 793 (1992), quoting 
Loudermill
, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496.  Taking an unreasonably long time to provide a hearing is the same as failing to provide a hearing at a meaningful time.  Excessive delays in administrative proceedings in which constitutionally protected interests are at stake make the proceedings fundamentally unfair.  
Stull
, 239 Ill. App. 3d at 335, 606 N.E.2d at 793.  Although legislation does not determine the requirements of the due-process clause, we can consult the statutory and regulatory deadlines as a guide for ascertaining what is a reasonable time.  See 
Cavarretta v. Department of Children & Family Services
, 277 Ill. App. 3d 16, 25, 660 N.E.2d 250, 256 (1996).  

The statute and regulations require the Department to complete its investigation within 60 days after receiving the report of child abuse or neglect.  325 ILCS 5/7.12 (West 2000); 89 Ill. Adm. Code §300.90 (Conway Greene CD-ROM June 2002).  On February 9, 2000, the Department received the report.  On March 31, 2000, an investigator for the Department, Sheree Foley received a 30-day extension to complete her investigation, but she did not use the full 30 days.  She completed her investigation on April 17, 2000.  Thus, the Department missed no deadlines in the investigation.

If the service unit determines the report is "indicated," it must notify the central register immediately of that finding.  325 ILCS 5/7.10 (West 2000).  In a letter dated April 11, 2000, the Department notified Lyon it had found the report to be "indicated," and on the same day, it notified Lyon's employer.  For reasons that are unclear, the Department did not put the "indicated" finding in the central register until July 19, 2000, when it denied Lyon's request to expunge the record.  

It is difficult to see how Lyon was prejudiced by the Department's delay in entering the "indicated" finding into the central register.  According to section 7.16 of the Act (325 ILCS 5/7.16 (West 2000)), Lyon had 60 days, after receiving notification of the "indicated" finding, to request expungement of the record.  He received notification of the "indicated" finding on April 11, 2000, and requested expungement on May 15, 2000, more than a month later.  If the Department did not act within 10 days on his request for expungement, Lyon had a right to a hearing.  See 325 ILCS 5/7.16 (West 2000).  Thus, under the statute, he could have requested a hearing, or appealed, within 10 days after May 15.  Instead, he waited for the Department's response to his request for expungement.  He received the unfavorable response on July 19, 2000, and filed his administrative appeal on August 29, 2000, more than a month later.      

The statute requires the Department to hold a hearing within a reasonable time after the request.  325 ILCS 5/7.16 (West 2000).  Lyon requested a hearing on September 15, 2000, and the hearing began on November 1, 2000.  Partly because of a 36-day continuance to which the parties agreed and partly because of  continuances that the administrative law judge ordered 
sua
 
sponte
, 
the hearing was not concluded until January 24, 2001.

The regulations require the Director to issue his decision within "90 days after receipt of a timely and sufficient request for an appeal."  89 Ill. Adm. Code §336.220(a) (Conway Greene CD-ROM June 2002).  A "request for an appeal" is "the written request by an appellant for an administrative hearing."  89 Ill. Adm. Code §336.20 (Conway Greene CD-ROM June 2002).  The statute requires the Director to issue his opinion within 45 days after the hearing.  325 ILCS 5/7.16 (West 2000).  Lyon requested a hearing on September 15, 2000.  The hearing ended on January 24, 2001.  The Director issued his decision on March 23, 2001-- 188 days after the request for a hearing, 36 days of which were attributable to Lyon because of his agreement to a continuance.  Therefore, the Department missed the 90-day deadline by 62 days.  The Director issued his decision 58 days after the hearing concluded, and, therefore, the Department missed the 45-day deadline by 13 days.  

In 
S.W. v. Department of Children & Family Services
, 276 Ill. App. 3d 672, 680, 658 N.E.2d 1301, 1307-08 (1995), the Department held a hearing six months after the plaintiff requested one, and the administrative appeal took 8.5 months.  The First District held that although the Department exceeded the statutory and regulatory deadlines, these deadlines were directory rather than mandatory and the delays were not so excessive as to violate due process.  
S.W.
, 276 Ill. App. 3d at 680-81, 658 N.E.2d at 1307-08.

The delays in the present case were not so long as those in 
S.W.
, and the First District held that the delays in 
S.W.
 were not so long as to violate the plaintiff's right to due process.  
S.W.
 never considered, however, the constitutionality of the "credible-evidence" standard of proof and the relationship of that standard of proof to the provision of a timely evidentiary hearing.

Lyon contends that the Department's filing an "indicated" report against him in the central registry on the basis of "credible evidence" rather than a preponderance of the evidence violated his right to due process.

In 
Cavaretta
, 277 Ill. App. 3d at 28, 660 N.E.2d at 258, the Second District considered "whether the 'credible[-] evidence' standard of 
review
 (89 Ill. Adm. Code §§336.130(b)(14), 336.150(a) (1994)) deprive[d] a subject of due process."  (Emphasis added.)  The sections of the Illinois Administrative Code that the court cited in parentheses dealt solely with the administrative law judge's recommendation after an evidentiary hearing and the director's acceptance, rejection, or modification of that recommendation.  See 
Cavaretta
, 277 Ill. App. 3d at 19, 660 N.E.2d at 252.  When the court held that the Department "should at least be required to prove its case by a preponderance of the evidence," the court was speaking only of the standard of review.  
Cavaretta
, 277 Ill. App. 3d at 29, 660 N.E.2d at 258.  Then as now, in the statutory scheme, only during an administrative appeal was the Department required to "prove" its case in an evidentiary hearing.  
Cavaretta
, 277 Ill. App. 3d at 19, 660 N.E.2d at 252.  The court never held that "credible evidence" was an insufficient basis for the initial decision to file an "indicated" report in the central register.

Other cases have so held, none of which bind us.  Recently, in 
Dupuy v. McDonald
, 141 F. Supp. 2d 1090, 1136 (N.D. Ill. 2001), the district court, reviewing the Act and regulations, held that disclosing an "indicated" finding to present and prospective employers on the basis of "credible evidence" rather than a preponderance of the evidence violated the alleged perpetrator's right to due process.  The plaintiffs had "offered unrebutted evidence that 74.6% of the indicated findings that are challenged are ultimately reversed on review."  
Dupuy
, 141 F. Supp. 2d at 1136.  This "staggering expungement rate" suggested to the court that "the risk of error inherent in the 'credible[-]evidence' standard" was high.  
Dupuy
, 141 F. Supp. 2d at 1136.  The court also was concerned about "the inexcusable delays experienced by [p]laintiffs in attempting to appeal, and seek expungement of, the indicated findings against them," during which "these individuals, labeled by the State as perpetrators of child abuse and/or neglect, lose not only their pride and reputation, but often their livelihood as well."  
Dupuy
, 141 F. Supp. 2d at 1130, 1138.

Other states have statutes similar to the Act.  In 
Valmonte v. Bane
, 18 F.3d 992, 1001, 1004 (2d Cir. 1994), the federal court held that New York's statute violated the plaintiff's right to due process in that it allowed the state to record an "indicated" finding in the central register--and thereby to disqualify the alleged perpetrator from employment in the field of child care--merely on the basis of "credible evidence" instead of a preponderance of the evidence.  

New York courts have held that putting an "indicated" finding in the central register on the basis of "credible evidence" does not in itself violate due process, if the state later gives the alleged perpetrator notice and an opportunity to be fully heard and "the standard of evidence necessary to maintain the subject's name in the Registry is a fair preponderance of the evidence."  
Anonymous v. Peters
, 189 Misc. 2d 203, 211, 730 N.Y.S.2d 689, 695-96 (2001).  They have held, however, that due process requires the state "to substantiate reports of child abuse by a fair preponderance of the evidence before they may be disseminated to providers and licensing agencies as a screening device for future employment."  
In re Lee TT
, 87 N.Y.2d 699, 712, 664 N.E.2d 1243, 1252, 642 N.Y.S. 2d 181, 190 (1996).

In 
Petition of Preisendorfer
, 143 N.H. 50, 56, 719 A.2d 590, 595 (1998), the Supreme Court of New Hampshire held:

"[D]ue process requires that the preponderance[-]of[-]the[-]evidence standard apply in any hearing to determine whether an individual's name should be added to the central registry [citation] where that individual would be excluded from working in his or her profession due to that listing."

A "probable-cause" standard of proof was unconstitutional.  
Preisdendorfer
, 143 N.H. at 52, 719 A.2d at 592.  See 
Cavaretta
, 277 Ill. App. 3d at 28, 660 N.E.2d at 258 (comparing the "credible evidence" standard to a "probable cause" standard)
.

In 
In re Selivonik
, 164 Vt. 383, 388, 670 A.2d 831, 835 (1995), quoting 33 Vt. Stat. Ann. tit. 33, §4912(10), Vermont's statute allowed the agency to enter a complaint of child abuse into the state registry if the agency determined "'after investigation that a report is based upon accurate and reliable information that would lead a reasonable person to believe that the child has been abused or neglected.'"  After entering the petitioner's name in the registry, the agency warned the petitioner's employer, a day care center, that continuing to employ the petitioner would violate its license.  
Selivonik
, 164 Vt. At 385, 670 A.2d at 833.  The day care center fired the petitioner.  
Selivonik
, 164 Vt. At 385, 670 A.2d at 833.  The supreme court held that even though the standard of proof for putting someone's name into the central register was lower than that of a preponderance of the evidence, the standard did not violate due process because the alleged perpetrator had a right to a postdeprivation hearing in which the standard of proof was a preponderance of the evidence.  
Selivonik
, 164 Vt. at 388, 670 A.2d at 835.  Here, under the Act and the Department's regulations, the alleged perpetrator has a right to a prompt hearing under the preponderance-of-the-evidence standard.  Only that right can possibly save the credible-evidence standard from unconstitutionality.

"[B]eing placed on the State register of suspected child abusers implicates a [f]ederal liberty interest."  
Cavaretta
, 277 Ill. App. 3d at 22, 660 N.E.2d at 254.  To evaluate the "credible-evidence" standard of proof, we weigh the following three factors:  

"(1) the nature of the private interest that may be affected by a particular decision; (2) the fairness and reliability of the existing procedure and the effect of additional procedural safeguards; and (3) the governmental interest."  
Cavaretta
, 277 Ill. App. 3d at 28, 660 N.E.2d at 258.

Putting Lyon's name in the central register as a sexual molester of a child and communicating the "indicated" finding to his employer and the State Board of Education greatly impaired his ability to pursue his chosen occupation, teaching.  See 
Cavaretta
, 277 Ill. App. 3d at 28, 660 N.E.2d at 258.  Considering the deep abhorrence in which society holds sexual predators of children, the "indicated" finding could make Lyon unemployable in any profession.  Typically, job applications ask whether the applicant ever was fired and why.  The private interest in this case is weighty.  

The "credible-evidence" standard of proof is a less rigorous standard than a preponderance of the evidence.  
Cavaretta
, 277 Ill. App. 3d at 28, 660 N.E.2d at 258.  Requiring a higher standard of proof for recording "indicated" findings in the central register could allow some abusers of children to continue.  Investigators do not have the benefit of an evidentiary hearing, and the information they glean will seldom be as complete as that which would emerge in such a hearing.  While the potential of injury to the alleged perpetrator is great if he or she is innocent, the potential of injury to the child also is great if the alleged perpetrator is guilty.  Of the two, adult and child, the latter is arguably the most vulnerable and the least powerful.  An alleged perpetrator can be exonerated and reinstated, but the harm to the child can be permanent.  Perhaps for those reasons the "credible-evidence" standard initially puts the risk of error on the adult rather than the child, with the understanding that the adult has the right to a prompt, full evidentiary hearing in which the standard of proof is a preponderance of the evidence.  Statutes carry a strong presumption of constitutionality.  
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 39, 759 N.E.2d 533, 545 (2001).

The credible-evidence standard is fair only if the alleged perpetrator soon receives a hearing under the preponderance-of-the-evidence standard and, soon after the hearing, the Department issues a final decision.  If the Department enters an "indicated" report in the central register on the basis of "credible evidence" rather than a preponderance of the evidence, due process requires the Department to strictly comply with its statutory and regulatory deadlines for processing the administrative appeal.  By failing to meet statutory and regulatory deadlines, the Department violated Lyon's right to due process.  For that reason, we affirm the circuit court's judgment.

Affirmed.

COOK, J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent.  

I disagree with the circuit court that the Department failed to provide Lyon with complete and timely discovery.  The Department was not provided that discovery to disclose, and when it received the discovery, the discovery was provided.  I disagree with the majority’s opinion that the Department violated Lyon’s right to due process.  While the entire appeal process took about eight months to complete, the delay was not unreasonable due to inadvertent delays and Lyon’s agreement to continue.  A time period of 104 days or 3.5 months elapsed from the time that Lyon’s appeal rights accrued to the time that the hearing commenced.  However, it was only 63 days from the time that Lyon filed his appeal request until the first day of the hearing, and 46 days from the hearing request until the hearing began.  These periods are much shorter than those found unconstitutional in 
Stull
, 239 Ill. App. 3d at 334-35, 606 N.E.2d at 792 (347 days), or 
Cavarretta
, 277 Ill. App. 3d at 26-27, 660 N.E.2d at 257 (299 days), and well within the period found acceptable in 
S.W.
, 276 Ill. App. 3d at 680-81, 658 N.E.2d at 1308 (180 days).

The Director issued his final decision on March 23, 2001, 246 days or a little over 8 months after the appeal process began.  Again, this was a period found acceptable by the 
S.W.
 court (
S.W.
, 276 Ill. App. 3d at 680-81, 658 N.E.2d at 1307-08);  and it was significantly shorter than the period that was found unconstitutional in 
Stull
, 239 Ill. App. 3d at 334-35, 606 N.E.2d at 792 (456 days), or 
Cavarretta
, 277 Ill. App. 3d at 26, 660 N.E.2d at 257 (598 days).

For these reasons, I would reverse the circuit court.