2001 UT 38

**In the Matter of the DISCIPLINE OF Jose Luis TRUJILLO, No. 4428.**

**Utah State Bar Office of Professional Conduct, Appellant.**

No. 991088.

Supreme Court of Utah.

May 8, 2001.

Gregory G. Skordas, Salt Lake City, for Trujillo.

Kate A. Toomey, Billy L. Walker, Salt Lake City, for Utah State Bar.

RUSSON, Associate Chief Justice:

¶ 1 The Utah State Bar's Office of Professional Conduct (the "OPC") appeals from a district court order denying its petition, filed pursuant to rule 18 of the Rules of Lawyer Discipline and Disability ("RLDD"), for the interim suspension[1] of attorney Jose Luis Trujillo ("Trujillo"). We reverse and remand.

## BACKGROUND

### I. FACTS

¶ 2 The underlying case is an attorney disciplinary action involving Trujillo, who has been practicing law as a licensed attorney in the state of Utah for approximately fifteen years. The facts giving rise to this disciplinary action are set forth below.

### A. The OPC Matter

¶ 3 In December 1998, Trujillo enrolled in and attended the OPC's semiannual ethics school. When he appeared at the ethics school, Trujillo tendered the OPC a check that was written on his client trust account to pay for his tuition, which the OPC refused. Trujillo then replaced the trust account check with a check written on his general business account. However, when the OPC submitted the replacement check for payment, the bank refused it, informing the OPC that Trujillo's business account had been closed.

¶ 4 Thereafter, beginning in January 1999, the OPC sent Trujillo three written requests for an explanation of the circumstances surrounding the two checks. The requests were in the form of letters, including service of a letter captioned "Notice of Informal Complaint" sent pursuant to rule 10(a)(4) of the RLDD.[2] Although Trujillo admitted receiving the requests for information, including the Notice of Informal Complaint, he did not respond.[3] Therefore, in April 1998, the OPC notified Trujillo that its complaint concerning the use of his client trust account was scheduled for a screening panel hearing on May 6, 1999,[4] and that he could submit documentation to be considered at the hearing if he did so not less than fourteen days prior to the hearing. Trujillo, however, failed to submit a written response to the complaint until approximately two o'clock on the afternoon of the screening panel hearing.

¶ 5 Trujillo's response stated that in October 1998, the IRS had levied his business bank account, resulting in a number of bounced checks and bank charges. The response further stated that after the IRS had levied his business account, he made an immediate effort to pay his creditors and that "[t]hose payments were made from funds deposited into the Trust Account." Trujillo's response added that "since the seizure by the IRS, [he] was accustom[ed] to depositing all of [his] funds into the Trust Account" because that was the only account he had available.

¶ 6 On the basis of Trujillo's testimony at the May 6, 1999, hearing, and the other evidence it considered, the screening panel voted to direct the OPC to file a formal complaint against Trujillo for violations of

---

1. "Interim suspension is the temporary suspension of a lawyer from the practice of law" pending a final determination of whether permanent discipline is necessary. Standards For Imposing Lawyer Sanctions R. 2.4; *see also In re Pendleton*, 2000 UT 77, ¶ 3, 11 P.3d 284.

2. Rule 10(a)(4) of the RLDD provides in pertinent part:

   OPC counsel shall cause to be served a Notice of Informal Complaint by regular mail upon the respondent at the address reflected in the records of the Bar. The notice shall have attached a true copy of the signed informal complaint against the respondent and shall identify with particularity the possible violation(s) of the Rules of Professional Conduct raised by the

informal complaint as preliminarily determined by OPC counsel.

3. Rule 10(a)(5) of the RLDD provides in pertinent part:

   Within 20 days after service of the Notice of Informal Complaint on the respondent, the respondent shall file with OPC counsel a written and signed answer setting forth in full an explanation of the facts surrounding the informal complaint, together with all defenses and responses to the claims of possible misconduct.

4. The purpose of a screening panel is to determine whether there is "probable cause to believe that there are grounds for public discipline and that a formal complaint is merited." *See* RLDD 11(a).

rules 1.15 (Safekeeping property), 3.3 (Candor toward the tribunal), 8.1 (Bar admission and disciplinary matters), and 8.4 (Misconduct) of the Rules of Professional Conduct.

### B. The Moreno Matter

¶ 7 In September 1997, Maria de la Luz Moreno ("Moreno") met with Trujillo at his office to inquire about representing her boyfriend, Jaime Gutierrez ("Gutierrez"), in a criminal matter. Moreno was referred to Trujillo by Luis Gonzalez ("Gonzalez"), a friend of Gutierrez and former client of Trujillo. At the time of the meeting, Gonzalez owed Trujillo, among other things, approximately $2885 in rent and utilities for an apartment and $470 in attorney fees. However, Trujillo did not disclose his prior dealings with Gonzalez to Moreno.

¶ 8 During the meeting, Moreno paid Trujillo $6500 in cash, $6000 of which was to be used to post bail for Gutierrez. According to Moreno, Gonzalez's payment to her of a debt owed Gutierrez supplied $2000 of the cash she gave Trujillo.[5] After receiving the money, Trujillo prepared a "Contract of Employment of Attorney" stating that he had "received the $6,000.00 for Bail of Jaime Nunez Gutierrez and non refundable sum of $500 for [c]riminal defense of the same from ... Maria De La Luz Moreno."

¶ 9 Trujillo eventually secured Gutierrez's release on bail, and the charges against Gutierrez were dismissed. Thereafter, Trujillo obtained a refund of the bail money in the amount of $5355 on September 14, 1998.[6] However, Trujillo did not seek Moreno's written authorization to get the money for her until October 19, 1998—more than a month after receiving the refund. This authorization, written in the present tense, stated: "Maria de la Luz Moreno as owner of the bail money of Jaime Gutierrez ... give my authorization to Jose L. Trujillo to get the money for me." Moreno testified that at the time she signed the written authorization, Trujillo did not disclose to her that he had already obtained the money. Trujillo testi-fied, however, that he had Moreno's oral permission to seek the refund, but not her written authorization, prior to the time he received the money.

¶ 10 After signing the authorization, Moreno called Trujillo numerous times to inquire about the bail money, but Trujillo did not return her calls. Eventually, Moreno was informed by Trujillo that although he knew she wanted the money, Gonzalez had also made a claim to the bail money. Accordingly, Trujillo requested a meeting between the parties. Trujillo acknowledged that both Moreno and Gonzalez appeared for the meeting, but that he asked them to come back later. When Moreno did not return at the appointed time, Trujillo made arrangements for the division of the funds between Gonzalez and himself, despite the fact that he had not resolved the question of who had a rightful claim to the money. In doing so, Trujillo prepared a paper signed by Gonzalez (the "Gonzalez document") authorizing Trujillo to make deductions from the bail money. The Gonzalez document provided as follows:

> I, Luis Gonzalez, have authorized the following deductions from the bail amount returned by the court on the case involving Jaime Gutierrez. I agree to hold Jose Luis Trujillo harmless or reimburse and pay all cost attorney's fee and judgements if Maria De La Luz Moreno or Jaime Gutierrez show that the bail moneys [sic] legal[ly] belong to them.

| | |
|---|---|
| 3 months rent: | $1,665.00 |
| damages: | 200.00 |
| Phone: | 592.36 |
| Electricity: | 178.30 |
| South Am [7] | 250.50 |
| | $2,885.56 |
| refund bail | 5,355.00 |
| | $2,470.00 |
| att. fee | 470.00 |
| Due | $2,000.00 |
| paid | 500.00 |
| Due on 11–23 | $1,500.00 [8] |

5. Gonzalez owed Gutierrez $2000 for the purchase of a vehicle.

6. A check from the Third District Court was made out to Trujillo on that date.

7. Apparently, the apartment was rented by South Am, a corporation, which "sub-letted" it to Trujillo, who then "sub-sub-letted" it to Gonzalez.

8. The mathematical calculations are printed exactly as they appear in the Gonzalez document.

Thus, the Gonzalez document stated that of the $5355 bail refund, Trujillo gave $500 in cash to Gonzalez and kept the rest as payment of debts that were owed to him by Gonzalez, including rent, utilities, and attorney fees, with the balance of $1500 applied to anticipated attorney fees for Gonzalez.[9]

¶ 11 On December 9, 1998, Moreno filed a complaint against Trujillo with the OPC. After receiving the complaint, the OPC sent Trujillo three letters, including a notice of informal complaint sent pursuant to rule 10(a)(4) of the RLDD, directing Trujillo to respond to Moreno's allegations. Although Trujillo admitted receiving the OPC's letters and the notice of informal complaint, he did not respond. Accordingly, the OPC notified Trujillo that a screening panel hearing would be conducted on Moreno's complaint on May 6, 1999. Trujillo did not submit a response to the complaint, however, until approximately two o'clock on the afternoon of the screening panel hearing.

¶ 12 At the conclusion of the hearing, the screening panel voted to direct the OPC to file a formal complaint against Trujillo for violations of rules 1.1 (Competence), 1.4 (Communication), 1.5 (Fees), 1.7 (Conflict of interest: general rule), 1.15(a)-(b) (Safekeeping property), 3.3 (Candor toward the tribunal), 8.1(b) (Bar admission and disciplinary matters), and 8.4(a)-(c) (Misconduct) of the Rules of Professional Conduct.

## C. The Bjarnson Matter

¶ 13 In August 1998, Allison Bjarnson ("Bjarnson") paid Trujillo $600 to represent her husband Gregg in a criminal matter. For two weeks prior to a hearing in the matter, Bjarnson tried to reach Trujillo by telephone, but Trujillo did not return her calls. Therefore, Bjarnson decided to retain new counsel and wrote Trujillo a letter terminating his services and requesting a refund of the $600. Trujillo eventually told Bjarnson that he would refund the money, but he never did so. Moreover, Trujillo never sent

9. According to Trujillo, at the time he received the bail money, Gonzalez had been arrested and

Bjarnson an accounting of the time he spent working on Bjarnson's case.

¶ 14 Accordingly, Bjarnson filed a complaint against Trujillo with the OPC. After receiving the complaint, the OPC sent Trujillo a letter asking him to respond to Bjarnson's allegations. Trujillo, however, did not respond to the OPC's letter. Therefore, the OPC sent Trujillo a notice of informal complaint pursuant to rule 10(a)(4) of the RLDD directing Trujillo to respond to Bjarnson's complaint, which Trujillo also ignored. Accordingly, the OPC notified Trujillo that a screening panel hearing on the matter would be conducted on May 6, 1999. Trujillo finally submitted a response to Bjarnson's complaint at approximately two o'clock on the afternoon of the screening panel hearing.

¶ 15 Trujillo's response to Bjarnson's allegations stated that the retainer paid by Bjarnson was "non refundable." Moreover, Trujillo produced a document captioned "Contract of Employment of Attorney," which was signed by Bjarnson, that characterized the money paid by Bjarnson as "non refundable." However, the contract did not identify conditions under which the purportedly nonrefundable sum would be disgorged.

¶ 16 After a hearing on the matter on May 6, 1999, the screening panel voted to direct the OPC to file a formal complaint against Trujillo for violations of rules 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping property), 1.16 (Declining or terminating representation), 3.3 (Candor toward the tribunal), 8.1 (Bar admission and disciplinary matters), and 8.4(a)-(d) (Misconduct) of the Rules of Professional Conduct.

## D. The Screening Panel's Demands For Information

¶ 17 During the screening panel hearing on the OPC, Moreno, and Bjarnson matters, the screening panel directed Trujillo to provide the OPC with the following records within two weeks of the May 6, 1999, hearing: (1)

wanted to retain Trujillo to represent him in the matter.

his trust account records; (2) a copy of the back of the refund check he received from the Third District Court in the Moreno matter; and (3) his time records for the Bjarnson matter. Trujillo, however, never produced the requested records.[10]

### E. The Sanchez Matter [11]

¶ 18 In April 1999, Rosalie Sanchez ("Sanchez") paid Trujillo $500 in cash to represent her son in a custody matter. However, despite leaving many messages, neither Sanchez nor her son was able to reach Trujillo. Therefore, Sanchez sent Trujillo a letter terminating his services and requesting a refund of "all moneys within seven days." Despite receiving the letter, Trujillo did not refund the money. However, after Sanchez filed a complaint with the OPC, Trujillo tendered to Sanchez a partial refund in the amount of $136.50.

## II. DISCIPLINARY PROCEEDINGS

¶ 19 Based on the above facts, the OPC commenced a disciplinary proceeding against Trujillo by filing a petition for the interim suspension of Trujillo in the district court on May 12, 1999.[12] The OPC filed its petition pursuant to rule 18 of the RLDD, which permits the OPC to seek interim suspension of a lawyer who poses a "substantial threat of irreparable harm to the public" pending a final determination of whether permanent discipline is necessary. RLDD 18(a).

¶ 20 The OPC alleged in its petition that Trujillo violated the Rules of Professional Conduct by, inter alia, failing to provide competent representation in the Moreno matter; failing to disclose to Moreno that Gonzalez was a former client and that he had relationships and dealings with Gonzalez in the past; obtaining a refund of the bail money in the Moreno matter without first obtaining Moreno's written permission to do so; failing to promptly deliver the bail money to Moreno, which she was entitled to receive; failing to withdraw from representing Bjarnson and Sanchez after Bjarnson and Sanchez discharged his services; failing to respond to Moreno's, Bjarnson's, and Sanchez's telephone calls; charging Bjarnson a nonrefundable attorney fee and then failing to refund the unearned portion; accepting an attorney fee from Sanchez and then failing to refund it after his discharge for failure to perform the work he was retained to perform; misusing his client trust account by commingling funds and using the trust account to pay personal debtors; and knowingly failing to respond to the OPC's requests for information, Notices of Informal Complaint, and demands for the production of documents in the OPC, Moreno, and Bjarnson matters. The OPC contended that in light of these acts, Trujillo's continued practice of law posed a substantial threat of irreparable harm to the public.

¶ 21 On August 26, 1999, an evidentiary hearing was held before Judge Homer F. Wilkinson on the OPC's petition for interim suspension. After the OPC had presented its case-in-chief but before Trujillo presented any evidence, Trujillo moved the court for a "directed verdict."[13] Trujillo argued that the OPC had not met its burden of proof in establishing that his continued practice of law posed a substantial threat of irreparable harm to the public. The disciplinary court agreed and entered an order denying the

---

**10.** Rule 8.1(b) of the Rules of Professional Conduct states that a lawyer in connection with a disciplinary matter shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

**11.** This matter was not among the cases considered by the screening panel.

**12.** At the time the OPC petitioned for interim suspension, it had also filed a formal complaint against Trujillo regarding unrelated allegations that he violated rules 1.1 (Competence), 3.1 (Meritorious claims and contentions), and 8.1 (Bar admission and disciplinary matters) of the

Rules of Professional Conduct. When Trujillo failed to file an answer to the OPC's complaint, the OPC obtained a default judgment against him. Trujillo is awaiting a sanctions hearing on the matter.

**13.** Although Trujillo characterized his motion as one for a directed verdict, a motion for a directed verdict contemplates only jury trials. *See Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 10, 20 P.3d 388. In the context of a bench trial, the directed verdict's procedural counterpart is a motion for involuntary dismissal under rule 41(b) of the Utah Rules of Civil Procedure. *See id.*

OPC's petition. In doing so, the court made the following findings of fact:

1. Trujillo did not intend to misappropriate his clients' money.

2. Trujillo demonstrated bad judgment.

3. Trujillo failed to understand the proper use of a trust account.

4. Trujillo entered "non-refundable" retainer agreements with the mistaken belief that he could keep the money given to him even if the fee was unreasonable in relation to the amount of work performed.

5. Trujillo may owe money to some of the clients whose cases were the subject of this hearing.

6. Trujillo delayed filing answers to informal complaints lodged against him with the OPC, but did, in every case, ultimately file an answer.

7. Trujillo appeared for the Screening Panel hearing concerning the informal complaints.

8. Trujillo in some instances failed to return client telephone calls.

9. Trujillo in some instances failed to file pleadings when they should have been filed.

10. Trujillo has not caused irreparable harm to any of the clients involved in this proceeding.

On the basis of these findings, the disciplinary court concluded that "although Trujillo in many instances exercised bad judgment, his conduct lacked the *intent necessary* to justify imposition of an interim suspension." (Emphasis added.) The OPC argues that the disciplinary court's ruling was error and appeals therefrom.

## ANALYSIS

■ ¶ 22 The OPC's sole argument in this appeal is that the disciplinary court misapplied the legal standard governing rule 18 interim suspensions by assuming, as a matter of law, that an interim suspension under rule 18 cannot be ordered absent a showing of wrongful intent. Because the question of whether the disciplinary court applied the correct standard to the OPC's petition for interim suspension is a legal determination, we afford the disciplinary court's ruling no deference; we review it for correctness. *See Hunsaker v. Kersh*, 1999 UT 106, ¶ 6, 991 P.2d 67; *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

¶ 23 Interim suspension is defined under rule 2 of the Standards for Imposing Lawyer Sanctions ("SILS"), which outlines the various sanctions available in attorney discipline cases, including disbarment, suspension, reprimand, admonition, probation, resignation with discipline pending, and other sanctions and remedies. Moreover, the imposition of sanctions in attorney discipline cases is governed by the SILS, which establishes certain factors that should be considered in determining whether to impose a specific sanction after a finding of lawyer misconduct. *See* SILS Rule 3. However, unlike the other sanctions, there is no provision in the SILS identifying conduct that makes interim suspension an appropriate sanction. Rather, rule 2 of the SILS explicitly provides that, unlike other sanctions, interim suspensions should not be imposed pursuant to the SILS, but rather "*as set forth in Rules 18 and 19 of the Rules of Lawyer Discipline and Disability.*" SILS Rule 2.4 (emphasis added). Therefore, we must look to rule 18 of the RLDD in determining the appropriate standard for the imposition of the requested interim suspension in the instant case.[14]

¶ 24 Rule 18 provides that the district court may order the interim suspension of an attorney upon receipt of sufficient evidence demonstrating that the lawyer (1) "either committed a violation of the Rules of Professional Conduct or is under a disability," *and* (2) "poses a substantial threat of irreparable harm to the public." RLDD 18(a). The elements of rule 18 must be established by "clear and convincing evidence." RLDD 17(b). As we will discuss below, neither of the two elements listed above requires the

---

**14.** Rule 19 of the RLDD provides for the interim suspension of an attorney "upon proof that the respondent has been convicted of a crime which reflects adversely on the respondent's honesty, trustworthiness or fitness as a lawyer." RLDD 19(c). However, rule 19 is not at issue in this case, and therefore, we do not discuss it.

showing of wrongful intent suggested by the disciplinary court's ruling.

### A. Disability Status and Violations of the Rules of Professional Conduct

¶ 25 The first element of rule 18—the requirement that the OPC prove by clear and convincing evidence that the attorney is under a disability *or* committed a violation of the Rules of Professional Conduct—does not explicitly or implicitly rest upon an attorney's intentional misconduct. An attorney's disability status derives from a "physical or mental condition which adversely affects the lawyer's ability to practice law," RLDD 23(c), and as in the case of incapacity resulting from disease or accident, may have little or nothing to do with the attorney's wrongful intent. *See, e.g., ABA Standards for Lawyer Discipline and Disability Proceedings,* Commentary to § 12.1, *reprinted in ABA/BNA Lawyers' Manual on Professional Conduct* 01:501–544, 540 (2001) (noting that "[i]t is important that incapacity not be treated as misconduct, to clearly distinguish willful conduct from conduct beyond the control of the lawyer"). Indeed, since one of the primary purposes of lawyer discipline and disability proceedings is to "protect the public ... from those who have demonstrated by their conduct that they are unable ... to properly discharge their professional responsibilities," RLDD 1(a), courts must be concerned with disabled lawyers who endanger the public, even if no misconduct has been committed.

¶ 26 Likewise, rule 18 does not require that the OPC demonstrate that the attorney *intentionally* committed a violation of the Rules of Professional Conduct. Rather, all that rule 18 requires is that the OPC demonstrate by clear and convincing evidence that the attorney "*committed* a violation of the Rules of Professional Conduct." RLDD 18(a) (emphasis added). Although Trujillo correctly notes that some of the Rules of Professional Conduct require intentional conduct, such as rule 3.3 (Candor toward the tribunal),[15] he fails to mention that other rules cover negligent conduct, such as rules 1.1 (Competence),[16] 1.3 (Diligence),[17] and 1.4 (Communication).[18] *See, e.g.,* 7 Am.Jur.2d *Attorneys at Law* § 67, at 128 (1997) ("An attorney's negligence, inattention, or professional incompetence in handling a client's affairs may necessitate disciplinary action."). Moreover, in addition to rules requiring negligent conduct, the Rules of Professional Conduct also contain strict liability rules, such as rule 1.15 (Safekeeping property).[19] *See, e.g., In re Anonymous,* 698 N.E.2d 808, 809 (Ind.1998) ("With regard to determining whether a violation of the 'anti-commingling' rule has occurred, it is irrelevant that the misconduct was not part of a scheme to conceal income, was not the product of selfish or dishonest motives, or that client funds were never in fact at risk."); *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 614 A.2d 1116, 1121 (1992) (stating that the rule prohibiting commingling of client funds "contains no requirement of an intentional act, but rather provides for strict liability"). Accordingly, the first element of rule 18, consisting of alternate prongs, does not require a showing by the OPC of wrongful intent on the part of the lawyer.

### B. Threat of Harm

¶ 27 Like the first element of rule 18, there is neither an explicit nor an implicit

---

**15.** Rule 3.3(a) of the RLDD provides in pertinent part: "A lawyer shall not *knowingly* ... [m]ake a false statement of material fact or law to a tribunal." (Emphasis added.)

**16.** Rule 1.1 of the RLDD states that "[a] lawyer shall provide competent representation to a client."

**17.** Rule 1.3 of the RLDD requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

**18.** Rule 1.4 of the RLDD provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to enable the client to make informed decisions regarding the representation.

**19.** Rule 1.15(a) of the RLDD provides in pertinent part: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."

requirement of intent in the second element—the requirement that the OPC prove by clear and convincing evidence that the attorney "poses a substantial threat of irreparable harm to the public." RLDD 18(a). Courts in other jurisdictions interpreting similar rules have noted that interim suspensions have the same effect as preliminary injunctions. *See, e.g., People v. Varallo,* 913 P.2d 1, 6 (Colo.1996) (en banc) ("Immediate, temporary, or interim suspensions have the same effect as preliminary injunctions."), *cert. denied,* 519 U.S. 822, 117 S.Ct. 80, 136 L.Ed.2d 38 (1996); *In re Malvin,* 466 A.2d 1220, 1223 (D.C.1983) (noting that "[t]he temporary suspension of an attorney pending the completion of disciplinary proceedings has the same effect as a preliminary injunction barring that attorney from the practice of law"). Accordingly, in determining whether an attorney poses a threat of harm to the public, these courts have applied the standards governing the issuance of preliminary injunctions, adapted to the context of a professional disciplinary proceeding. *See In re Malvin,* 466 A.2d at 1223; *In re Ellis,* 425 Mass. 332, 680 N.E.2d 1154, 1160 (1997); *see also* Francis M. Dougherty, Annotation, *Validity and construction of procedures to temporarily suspend attorney from practice, or place attorney on inactive status, pending investigation of, and action upon, disciplinary charges,* 80 A.L.R.4th 136, 154 n. 6 (1990) (stating that a "number of courts" have adopted the District of Columbia Court of Appeals' analysis in *In re Malvin,* applying the standard for issuing preliminary injunctions in determining whether an attorney should be temporarily suspended from the practice of law, pending final disposition of disciplinary proceedings). We find this reasoning persuasive and adopt it here.

■ ¶ 28 Thus, in determining whether an attorney poses a substantial threat of irreparable harm to the public, a disciplinary court must consider (1) whether the public will suffer irreparable harm unless the order of interim suspension issues, (2) whether the threatened injury to the public outweighs whatever damage the proposed order may cause the attorney temporarily suspended from the practice of law, (3) whether the proposed order, if issued, would be adverse to the public interest, and (4) whether there is a substantial likelihood, based on all the available evidence, that a significant sanction will be imposed on the attorney at the conclusion of any pending disciplinary proceedings.[20] *See* Utah R.Civ.P. 65A(e) (outlining the factors to be considered in determining whether to grant a preliminary injunction or temporary restraining order); *Hunsaker v. Kersh,* 1999 UT 106, ¶ 7, 991 P.2d 67 (same). It is a balancing of these factors, not a litmus test premised upon the finding of wrongful intent, that justifies a determination by a disciplinary court that an attorney poses a substantial threat of irreparable harm to the public.

## C. The Disciplinary Court's Order

■ ¶ 29 Turning to the facts of this case, the reasoning of the disciplinary court, as expressed in its order and in its comments during the interim suspension hearing, assumed, as a matter of law, that a rule 18 interim suspension cannot be ordered absent a finding of wrongful intent. Indeed, the disciplinary court specifically stated: "[A]lthough Trujillo in many instances exercised bad judgment, *his conduct lacked the intent necessary to justify imposition of an interim suspension.*" (Emphasis added.) However, as explained above, in determining whether to grant a petition for interim suspension, the disciplinary court must not look exclusively to whether the attorney engaged in inten-

**20.** Courts in other jurisdictions have enunciated similar factors to be considered in determining whether a petition for interim suspension should be granted. For example, in *In re Malvin,* the court held that the following factors must be considered in balancing the competing interests: (1) whether the attorney is causing irreparable public harm by misappropriating client funds to his own use, or by other means, (2) whether there is a substantial likelihood, based on all the available evidence, including affidavits, that a significant sanction will be imposed on the attorney at the conclusion of any pending disciplinary proceedings, (3) whether the balance of injuries, as between attorney and clients, favors a temporary suspension, and (4) whether the public interest would be served by a temporary suspension.

466 A.2d at 1223 (footnote omitted).

tional misconduct. Rather, the court must employ the standard for issuing preliminary injunctions, weighing the harm to the attorney in the event the interim suspension is granted against the harm to the public in the event the interim suspension is denied. Nothing in rule 18 requires the showing of wrongful intent suggested by the disciplinary court's ruling. Accordingly, we reverse the disciplinary court's order denying the OPC's petition for interim suspension.

¶ 30 We decline to hold, however, as the OPC requests, that the elements of rule 18 have been definitively satisfied in this case. Our ruling merely declares that the trial court erred in construing rule 18 as narrowly as it did. On remand, should the OPC choose to proceed with its petition for the interim suspension of Trujillo, the trial court should employ the proper standard for the imposition of rule 18 interim suspensions as enunciated herein.

¶ 31 Chief Justice HOWE, Justices DURHAM, DURRANT, and WILKINS concur in Associate Chief Justice RUSSON's opinion.