Original
No. LD-2005-001

## REINER'S CASE

Argued: April 20, 2005
Opinion Issued: May 6, 2005

*Landya B. McCafferty*, of Concord, by brief and orally, for the attorney discipline office.

*Shaheen & Gordon, P.A.*, of Concord (*Steven M. Gordon* on the brief and orally), for the defendant.

DUGGAN, J. This case arises out of the interim suspension of the respondent, Gary H. Reiner, from the practice of law. A Judicial Referee (*Gray*, J.) recommended that the suspension should not remain in effect. We remand to the referee for a new hearing.

The respondent, a member of both the New Hampshire and Maine bars, was indicted by a federal grand jury on several felony charges arising out of his alleged connection with prostitution and money laundering activities allegedly occurring at a health club in Kittery, Maine. On January 26, 2005, we received a copy of the indictment from the Attorney Discipline Office (ADO). On February 4, 2005, we suspended the respondent from the practice of law in New Hampshire pending further order of the court. SUP. CT. R. 37(9)(i). In the same order, we stated that the respondent may show cause why the suspension should be lifted and why he should not be assessed all expenses that may be incurred in the investigation and prosecution of this matter.

On February 22, 2005, the respondent filed a response to the court's suspension order, challenging the suspension on three grounds: (1) the interim suspension without notice and a pre-suspension hearing violated due process; (2) Supreme Court Rule 37(9)(i) is unconstitutionally vague; and (3) the interim suspension constituted public condemnation in violation of his due process rights. We issued an order scheduling a hearing for March 9, 2005, on the matter. At the same time, we ordered the ADO to file a memorandum addressing the issues raised by the respondent and

advising the court whether it believed that the respondent should remain suspended pending resolution of the criminal charges against him.

On March 9, 2005, oral argument was held before the court. Following argument, the matter was referred to the judicial referee to hold a hearing on the issue of whether the respondent's suspension should remain in effect pending resolution of the criminal charges. That hearing was held on March 21, 2005, and, on March 22, 2005, the referee recommended that the suspension should not remain in effect because the suspension was not necessary for the protection of the public or the preservation of the integrity of the legal profession.

After reviewing the report and recommendations of the referee as well as the transcript of the hearing, we concluded that briefing and further argument of this case was necessary. On April 20, 2005, oral argument was held on the issue of whether we should adopt the referee's recommendation.

We address each issue in turn.

*I. Post-suspension hearing*

First, the respondent argues that his suspension violated due process under the State and Federal Constitutions because he was not first afforded notice and a pre-suspension hearing. We first address the respondent's claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal opinions only for guidance. *Id.* at 232-33. We determine whether challenged procedures satisfied due process under a two-part test. *Petition of Preisendorfer*, 143 N.H. 50, 52 (1998). First, we must determine whether the challenged procedures concern a legally protected interest. *Id.* Second, we must determine whether the procedures afford the appropriate procedural safeguards. *Id.* Because there is no dispute that an attorney has a constitutionally protected interest in his license to practice law, *see Appeal of Plantier*, 126 N.H. 500, 507 (1985), we turn to the question of the appropriate procedural safeguards.

In this context, we address the respondent's challenge to the use of a post-suspension hearing for an interim suspension based solely upon an indictment. In analyzing what procedures are due in a particular case, we consider the following factors:

> (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's

interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Preisendorfer*, 143 N.H. at 53 (quotation omitted).

The United States Supreme Court addressed a similar situation in *FDIC v. Mallen*, 486 U.S. 230, 240-41 (1988). In *Mallen*, the FDIC temporarily suspended a bank official on the basis of a federal indictment without providing the bank official with a pre-suspension hearing. *Id.* The Court noted that "[a]n important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Id.* at 240. The Court concluded that "the postponement of the hearing [was] supported by such an interest" because prompt suspension of indicted bank officers is "necessary to protect the interests of depositors and to maintain public confidence in our banking institutions." *Id.* at 240-41. The Court further concluded that because a grand jury had determined that there was probable cause to believe that the bank official had committed a felony, the "suspension was supported by findings that assure that the suspension was not baseless." *Id.* at 241. Thus, a post-suspension hearing comported with due process in these circumstances. *Id.*

 Here, the respondent's interest in his license to practice law is "without doubt an important interest that ought not be interrupted without substantial justification." *Id.* at 243. Like *Mallen*, however, a post-suspension hearing is justified because prompt suspension of indicted attorneys is necessary in some instances to protect the public and preserve the integrity of the legal profession. *See* SUP. CT. R. 37(9)(i), 37(16)(f). In addition, the suspension is supported by a grand jury indictment, thereby assuring that the suspension is not baseless. *See Mallen*, 486 U.S. at 241. Accordingly, an immediate interim suspension followed by a post-suspension hearing for an attorney who has been indicted comports with due process.

The next question is whether the post-suspension procedures satisfied due process. In that context, the Court in *Mallen* considered the time delay of the hearing and decision because "there is a point at which an unjustified delay in completing a post-deprivation proceeding would become a constitutional violation." *Id.* at 242 (quotation omitted).

> In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

*Id.*

In *Mallen*, the statute required the FDIC to hold a hearing "within 30 days of a written request for an opportunity to appear before the agency to contest a suspension." *Id.* The statute further provided that a decision be issued within sixty days of the hearing. *Id.* "Thus, at maximum, the suspended officer receives a decision within 90 days of his or her request for a hearing." *Id.* In evaluating this time frame, the Court noted that Mallen had an important interest in his continued employment. *Id.* at 243. Nonetheless, the Court balanced this interest against a suspended bank officer's interest in seeing that a decision is not made with excessive haste, the agency's ability to give greater weight to the public interest and the fact that, given the indictment, the suspension would not likely augment the injury to the officer's reputation. *Id.* at 243-44. The Court concluded that a thirty-day delay of the hearing and a potential ninety-day delay of a decision did not violate due process. *Id.* at 245.

■■ Rule 37(9)(i) does not provide a procedural framework for a post-suspension hearing. We take this opportunity to interpret the rule to require a post-suspension hearing to occur promptly so as to comply with due process. *See Matter of Kenney*, 504 N.E.2d 652, 656 (Mass. 1987); *State v. Winslow*, 134 N.H. 398, 400 (1991). Following an interim suspension order based upon an indictment, the suspended attorney may request a hearing. The hearing will be scheduled within thirty days and held before the court or before a referee, at the court's discretion. At the hearing, the ADO bears the burden of persuading the court that, by a preponderance of the evidence, suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession. *See* SUP. CT. R. 37(16)(f). The court will issue a decision regarding the suspension as soon as practicable after the hearing. These procedures satisfy the due process requirements as stated in *Mallen*, 486 U.S. at 245.

The Federal Constitution offers the respondent no greater due process rights than does the State Constitution under these circumstances. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Preisendorfer*, 143 N.H. at

52. Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution.

## II. Standard

Second, the respondent argues that the standard for suspension under Supreme Court Rule 37(9)(i) is unconstitutionally vague. We disagree.

Rule 37(9)(i) provides that: "Whenever an attorney is indicted or bound over for any felony, the court shall take such actions as it deems necessary, including but not limited to the suspension of the attorney."

Although the rule does not set forth a standard by which the court may exercise its discretion in suspending an attorney, the necessary specificity need not be contained in the rule itself; the rule in question may be read in the context of related rules, prior decisions, or generally accepted usage. *See State v. Porelle*, 149 N.H. 420, 423 (2003). Rule 37(16)(f) provides a standard for determining when suspension is appropriate: "The court may suspend attorneys ... upon such terms and conditions as the court deems necessary for the protection of the public and the preservation of the integrity of the legal profession." Moreover, we have held that:

This court has the inherent power to take reasonable and expeditious action in the suspension or removal of members of the bar for the protection of the community. In the exercise of this power this court has the obligation to make appropriate disciplinary orders for the protection of the public, as well as for the maintenance of public confidence in the bar as a whole.

*Barnard's Case*, 101 N.H. 33, 34 (1957) (quotation and citations omitted).

■ Accordingly, the court may impose an interim suspension pending the resolution of criminal charges pursuant to Rule 37(9)(i) when it is deemed necessary for the protection of the public and the preservation of the integrity of the legal profession. SUP. CT. R. 37(16)(f); *see Barnard's Case*, 101 N.H. at 34. Because the necessary specificity of the standard for suspension is contained within the context of related rules, Rule 37(9)(i) is not unconstitutionally vague. *See Porelle*, 149 N.H. at 423.

■■ The standard set forth above shall also be applied at the post-suspension hearing. At the hearing, the ADO bears the burden of proving by a preponderance of the evidence that the suspension is necessary pursuant to Rule 37(16)(f). In meeting this burden, the ADO may rely upon the allegations set forth in the indictment, make offers of proof and introduce additional evidence. Although the indicted attorney is presumed

innocent of the charges, the allegations set forth in the indictment may nonetheless be considered in determining whether suspension is necessary. *See Barnard's Case*, 101 N.H. at 34 (recognizing that "[a]lthough the respondent is presumed innocent until he has been proved guilty of the criminal charges pending against him, his right to continue the practice of law in the interim is not in the public interest"). The ADO need not prove that the allegations in the indictment are true. Rather, the ADO must establish that, considering the allegations in the indictment, the suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession. *See* SUP. CT. R. 37(16)(f).

*III. Condemnation*

Third, the respondent argues that the interim suspension constituted public condemnation in violation of his due process rights. We disagree.

We have held that "incidental injury to reputation, without more, is not a deprivation of 'liberty.'" *Riblet Tramway Co. v. Stickney*, 129 N.H. 140, 148 (1987). In *Mallen*, the Court recognized that "[t]hrough the return of the indictment, the Government has already accused [Mr. Mallen] of serious wrongdoing. The incidental suspension is not likely to augment this injury to the officer's reputation." *Mallen*, 486 U.S. at 243.

Likewise, the federal government's indictment charges the respondent with money laundering and solicitation of prostitution. The suspension of the respondent is not likely to augment the injury to his reputation. Accordingly, the incidental injury to his reputation by the suspension does not violate due process. *See Riblet Tramway Co.*, 129 N.H. at 148.

*IV. Referee's Recommendation*

Finally, we must determine whether we should adopt the referee's recommendation that the suspension is not necessary for the protection of the public or the preservation of the integrity of the legal profession. Our standard of review for the referee's factual findings in a lawyer discipline case is whether a reasonable person could have reached the same decision as the referee. *Feld's Case*, 149 N.H. 19, 22 (2002), *cert. denied*, 540 U.S. 815 (2003). However, we review *de novo* to determine whether the referee committed errors of law. *Id.*

The ADO argues that we should not adopt the referee's recommendation because: (1) the referee erred as a matter of law by failing to give any

weight to the allegations in the indictment; and (2) the allegations in the indictment support the interim suspension of the respondent pursuant to Rules 37(9)(i) and 37(16)(f). The respondent argues that we should adopt the referee's recommendation because: (1) the referee adequately considered the allegations within the indictment; (2) a reasonable person could have reached the same decision as the referee; and (3) the ADO failed to introduce sufficient evidence to warrant suspension.

At the March 21, 2005 hearing, the referee placed the burden of proof on the respondent. We recognize that our February 4, 2005 show cause order may have misled the referee with regard to which party should bear this burden. Nonetheless, we now hold, as explained above, that the ADO has the burden of proving that suspension is necessary for the protection of the public and preservation of the integrity of the bar.

In addition, the referee misconceived the function of the presumption of innocence in this proceeding. The referee reasoned that continuing the interim suspension would suggest that "the Court has placed its imprimatur on the veracity of the indictment prior to adjudication of the charges contained therein and in contravention of the presumption of innocence to which he is entitled." Although the respondent retains the presumption of innocence with regard to the charges within the indictment, the allegations themselves may nonetheless warrant suspension. As noted above, the burden on the ADO is not to prove that the respondent committed the crimes alleged. Rather, the ADO must show that the respondent's alleged conduct in the alleged crimes makes suspension necessary for the protection of the public and the integrity of the legal profession. To meet this burden, the ADO may supplement the allegations in the indictment with additional evidence of the respondent's conduct.

Accordingly, we remand to the referee for a new hearing to reevaluate the evidence in light of the function of the presumption of innocence described above and to give the ADO an opportunity to meet its burden. On remand, we note that the referee should consider the presumption of innocence in light of our holding above and should not view this presumption as an impediment to determining whether the ADO has met its burden.

*Remanded.*

BRODERICK, C.J., and DALIANIS and GALWAY, JJ., concurred.